16737

FRUEHAUF TRAILER CO. v. SOUTH CAROLINA ELECTRIC & GAS CO.

(75 S. E. (2d) 688)

*Mr. N. A. Turner,* of Columbia, *for Appellant,* ▮▮▮

*Messrs. Cooper & Gary,* and *Julian J. Nexsen,* of Columbia, *for Respondent,* ▮▮▮

*Mr. N. A. Turner,* of Columbia, *for Appellant, in Reply.*

April 27, 1953.

BAKER, Chief Justice.

The appellant is the owner and holder of a conditional sales contract, the conditions of which have been broken, covering one Fruehauf Furniture Van commonly known as a trailer, which trailer, while secured to and being drawn by a truck tractor, was attached and sold with the tractor, by the respondent under a separate action brought by respondent against the tractor and trailer under the provisions of section 8792 of the Code of 1942, as amended, section 45-551 of the Code of Laws of South Carolina, 1952, which statute provides for a lien on motor vehicles in favor of one injured or damaged through the negligent or reckless operation thereof.

Appellant contends the attachment was unlawful in that the trailer is not a motor vehicle within the meaning of the attachment statute, and brought this action for damages in the sum of $3,000.00. Respondent did not file a formal pleading, but, by agreement, the case was submitted to Honorable J. Woodrow Lewis, presiding at the October term, 1952, of the Court of Common Pleas for Richland County, upon an oral demurrer raising this question: "Is a trailer being drawn by a tractor on the highway and securely attached thereto a 'motor vehicle' within the meaning of Section 8792 of the Code of Laws of 1942, as amended, and subject to attachment for damages done by the combination?"

Judge Lewis sustained the demurrer, answering the question in the affirmative, and we now quote extensively and with approval from his order, which will be affirmed.

"The trailer involved in this controversy is one having one axle with the front of the trailer resting on the rear of the truck-tractor.

"After carefully considering the matter and the authorities submitted by the respective parties, I am convinced that a proper construction of the term *motor vehicle* as used in section 8792 of the Code requires that the trailer referred to herein be considered an integral part of the unit so as to permit its attachment for damages done by the combination

of which it is part. The plaintiff, by the very nature of the trailer and its construction, could have sold it only for the purpose of its being attached to and used in connection with a truck-tractor on the public highway. The trailer and the truck-tractor form one unit. They are both part of one operation out of which the damages arose. The truck-tractor is by the nature of its construction designed to operate with the trailer, and likewise the trailer to operate with the tractor. The trailer, because of the additional weight and momentum given to the unit, has a definite bearing on the operation of the truck tractor. These considerations are but common experience.

"The fact that the truck-tractor and trailer may be separately licensed by the statutes is not controlling. Trailers differ in size and load capacity, and for that reason they may be separately licensed to operate on the highways. This does not mean that the trailer is any less a part of the motor vehicle unit than the body on a one unit truck. The carrying capacity of one unit trucks varies and accordingly carry a license to fit the load limit. The only difference between a truck-tractor and trailer and a one unit truck is that in the first the load is carried on the trailer with one end resting on the tractor while in the latter the load is carried on a body all of which is built on the truck chassis. There is no difference in substance between the two, and certainly no one would claim that a one unit truck was not a motor vehicle within the meaning of section 8792, supra.

"I have not concerned myself with research into whether truck-tractors and trailers were in use at the time of the enactment of section 8792, and within the contemplation of the Legislature at the time the term motor vehicle was inserted therein. Great progress has been made in the development of motor transportation upon the highways, and in the development of motor transportation in general. The fact that the vehicles for such transportation may change does not mean that statutory enactments relat-

ing thereto become outmoded. The term *motor vehicle* must properly be interpreted to embrace all vehicles which are now motor drawn upon the highways, regardless of whether the particular vehicle was in existence at the time of the statutory enactment. The truck-tractor and trailer is a unit developed for motor transportation, and, as an operating unit, are inseparable. No sound reason appears to call one a motor vehicle within the meaning of section 8792 and not the other when damages result from the operation of the unit or combination.

"It is, therefore, my conclusion that a trailer being drawn by a truck-tractor on the highway and securely attached to the tractor is, together with the truck-tractor to which it is attached, a *motor vehicle* within the meaning of section 8792 and is subject to attachment for damages done by the combination."

In 1905 the General Assembly, in providing for rules of the road, defined a motor vehicle as used in the Act, as all vehicles propelled by gasoline, explosive vapor, steam, electricity or other kindred power. In 1912 the attachment statute was passed. Following 1912 there have been various statutes passed by the General Assembly relating to motor vehicles, in which motor vehicles and trailers have been treated as one unit or two units. The appellant bases its legal position on the fact that when the Attachment Act was passed in 1912 the General Assembly had before it its previous definition of motor vehicles, which in itself did not include trailers or semi-trailers, especially since they were not in use at that time. This reasoning, says appellant, becomes doubly apparent when the fact is considered that in statutes passed by the General Assembly with regard to motor vehicles after trailers came into use, the two have been either treated separately or trailers have been included within the definition of motor vehicles by specific language.

But respondent properly points out that the various statutes cited by appellant, although in the field of motor vehicular transportation, are on subjects which have no rela-

tion to the motor vehicle attachment statute. All of the statutes referred to by appellant are regulatory in substance or are for the purpose of registration and licensing, but the attachment statute is strictly remedial and for the object of providing security for collection of damages.

The lawmaking body's construction of its language by means of definitions of the terms employed should be followed in the interpretation of the act or section to which it relates and is intended to apply. The attachment statute does not contain a definition of "motor vehicle," and there is no statute *in pari materia,* in this state, which contains a definition. It follows that the General Assembly's definition of "motor vehicle," "trailer," and "semi-trailer," in unrelated statutes is not controlling in the meaning of "motor vehicle" as employed in section 8792 of the Code of 1942, Section 45-551, Code of 1952.

The object and purpose of the attachment statute is to give an injured party a lien for his damages against the offending motor vehicle when operated negligently or wilfully.

In 1912, as already stated, tractor-trailer combinations were not in use upon our highways when the General Assembly employed the phrase "motor vehicle" in the original attachment statute, but it was then recognized that a power propelled vehicle was an instrumentality capable of inflicting personal and property damages through its negligent and careless operation. A trailer in and of itself does not have inherent dangerous properties since it is not self-propelled and can be operated only when attached to a motor vehicle, but when once attached it becomes a part of a power operated vehicle with dangerous potentialities, and therefore subject to lien for damages for the negligent or wilful operation of the power unit of which it has been made a part.

The intent of the statute is well stated in *Johnson v. Hall,* 208 S. C. 534, 38 S. E. (2d) 708, 710: "Negligent and careless operation of a motor vehicle, whereby damage to per-

son or property proximately results, creates a cause of action for attachment because a lien for restitution upon *the offending vehicle* arises perforce the statute (Sec. 8792)." (Emphasis added.) When tractor and trailer are attached there is the combination of two units for one function, that is, transportation purposes. When negligently or recklessly operated with resulting damage the combined units become the offending vehicle in that the two are an essential and integral part of each other.

In 60 C. J. S., Motor Vehicles, § 1(a), it is stated:

"A trailer or a semi-trailer is a vehicle, but is not a motor vehicle, except that in so far as it facilitates the primary function of a motor vehicle of transporting persons and things, after being attached to the motor vehicle for that purpose, it may be regarded as becoming a part of the motor vehicle, although as to the latter proposition there is also authority to the contrary."

The lower court in its order has correctly decided the issue before it on the oral demurrer, and what we have said following the quoted part of the order of the lower court, which is now a part of this opinion, is for the purpose of amplification by reason of the earnest argument submitted by appellant.

Appellant's exception to the order of Judge Lewis is dismissed and the judgment of the lower court affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.