23313

Vincent S. TOUSSAINT, M.D., Respondent v. STATE BOARD OF MEDICAL EXAMINERS, Appellant.

(400 S.E. (2d) 488)

Supreme Court

*Asst. Atty. Gen. Richard P. Wilson*, Columbia, *for appellant.*

*Larkin Mims*, Anderson, and *Cameron B. Littlejohn, Lewis, Babcock, Pleicones and Hawkins*, Columbia, *for respondent.*

Heard Nov. 26, 1990.

Decided Jan. 21, 1991.

GREGORY, Chief Justice:

This is a physician disciplinary action. The circuit court reversed the sanction imposed by appellant (Board). We reverse.

Respondent is a physician licensed to practice in South Carolina. He is a general practitioner. In 1987, the Board served a complaint upon him alleging ethical violations. A panel hearing was held and the panel recommended sanctions be imposed. After a final hearing, the Board issued its order finding respondent guilty of misconduct and indefinitely suspending his license to practice medicine.[1] On appeal, the circuit court reversed on the ground the record contained no substantial evidence to support the Board's findings of ethical violations; it also found a lack of notice the alleged conduct was unethical.

The charges of misconduct arise from three basic allegations set forth below.

### 1. *Gynecomastia Cases*

Respondent treated three adolescent boys for gynecomastia, enlarged breasts in a male, by performing bilateral subcu-

---

[1] The order provides after six months suspension, respondent's license shall be reinstated on probationary status conditioned upon payment of a $5,000 fine and periodic review.

taneous mastectomies. The complaint alleged he performed these surgeries without valid documented medical justification. The Board's witness, Dr. Watkins, testified gynecomastia is a symptom rather than a disease which may be caused by such various things as obesity, drug ingestion, heredity, and hormonal abnormality. He testified respondent's physical examination and evaluation of each of these patients was inadequate to justify performing mastectomies because respondent failed to establish whether the cause of the gynecomastia in each case was one that should be corrected by surgery. He concluded respondent's treatment in these cases did not meet the medical standards of the community.

### 2. *Charlotte Shumpert*

Ms. Shumpert came to respondent seeking a "tummy tuck" for an abdomen marred by stria (stretch marks) from pregnancy. After a consultation, she signed a consent to a tubal litigation and "scar revision." As a result of the surgery, Ms. Shumpert's navel was removed.

The complaint charged respondent performed this surgery without the patient's consent and without valid legitimate medical justification. Expert testimony in the record indicates "tummy tuck" is the common name for abdominoplasty, a procedure whereby abdominal skin is removed to create a firmer abdominal profile. Although Ms. Shumpert believed she would receive a tummy tuck, her consent was for a different procedure, a scar revision. All the experts agreed the surgery performed was in effect a scar revision, although the patient had stria around her navel and not scars as indicated in respondent's patient records.

The Board's witness, Dr. Wallace, testified respondent should have obtained the patient's pre-operative consent to removal of her navel as a possible consequence of surgery. He also testified it should not have been necessary to remove the navel based on his conclusion there was no scarring around the patient's navel. Finally, Dr. Wallace testified a general practitioner is not qualified to perform scar revision surgery which is a procedure requiring specialized training. He concluded respondent's treatment was outside the range of acceptable medical treatment in this state.

### 3. *Sally Hunter*

Ms. Hunter was treated in the emergency room of Bailey Memorial Hospital for a scalp laceration. Because she was intoxicated, the emergency room physician felt she required observation. He called respondent at home during the early morning hours to admit Ms. Hunter to the hospital. Ms. Hunter did not want to remain in the hospital and caused a great disturbance. The nurses telephoned respondent for a substitute sedative prescription. When the patient's agitation continued, they again called respondent for directions. The nurses testified respondent ordered them to discharge Mrs. Hunter. Ms. Hunter died the next day of sickle cell crisis caused by blood loss from the laceration and continued alcohol consumption after her discharge.

The complaint charged respondent with failing to examine or attend to the medical needs of his patient. The Board's expert, Dr. McFarland, testified respondent's treatment was outside the bounds of appropriate medical treatment. Even respondent's expert, Dr. Gregg, testified on cross-examination that to discharge a patient without ever having seen her was substandard medical care.

Although respondent presented conflicting evidence on all of these factual issues, the record contains substantial evidence to support the Board's finding in each case that respondent's treatment was below the standard of care expected of competent medical practitioners in similar situations in this state. It is well-settled the circuit court must affirm the findings of an administrative agency if there is any substantial evidence to support them. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). In this case, however, the circuit court essentially found there was no substantial evidence to support the Board's findings of misconduct because the rules governing physician conduct are so vague as to provide no standards by which to determine whether misconduct had occurred. We therefore address the dispositive issue whether these rules are unconstitutionally vague.

Respondent was charged with misconduct as defined in the following provisions of S.C. Code Ann. § 40-47-200 (1986):

(7) That the holder of a license has violated the principles of ethics as adopted by [the Board] and published in its regulations;

(8) That the holder of a license is guilty of engaging in any dishonorable, unethical, or *unprofessional conduct* that is likely to deceive, defraud, or harm the public;

(12) That the holder of a license is guilty of violating the code of medical ethics adopted by [the Board] . . . or has been found by [the Board] to lack the ethical or *professional competence* to practice medicine or osteopathy. (Emphasis added.)

The Due Process Clause protects against "the exaction of obedience to a rule or standard which [is] so vague and indefinite as really to be no rule or standard at all." *A.B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 45 S. Ct. 295, 297, 69 L. Ed. 589 (1925). A law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S. Ct. 126, 127, 70 L. Ed. 322 (1926).

The constitutional standard for vagueness is the practical criterion of fair notice to those to whom the law applies. *American Communications Ass'n v. Douds*, 339 U.S. 382, 412, 70 S. Ct. 674, 691, 94 L. Ed. 925 (1950); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. (2d) 362 (1982). When the persons affected by the law constitute a select group with a specialized understanding of the subject being regulated, the degree of definiteness required to satisfy due process is measured by the common understanding and knowledge of the group. *Fleming v. United States Dept. of Agriculture*, 713 F. (2d) 179 (6th Cir. 1983); *Precious Metals Associates, Inc. v. Commodity Futures Trading Commission*, 620 F. (2d) 900 (1st Cir. 1980); *Bass Plating Co. v. Town of Windsor*, 639 F. Supp. 873 (D. Conn. 1986). One to whose conduct the law clearly applies does not have standing to challenge it for vagueness. *Parker v. Levy*, 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. (2d) 439 (1974); *Hayes v. City of Wilmington*, 451 F. Supp. 696 (1978); *see also Centaur, Inc. v. Richland County*, ___ S.C. ___, 392 S.E. (2d) 165 (1990).

We conclude § 40-47-200 clearly applies to respondent's conduct. Subsection (8) forbids unprofessional conduct that is likely to harm the public. Subsection (12) specifically provides that a lack of professional competence constitutes misconduct for which a physician may be disciplined. We hold these provisions are sufficiently definite to provide notice that a physician must conform his conduct to those standards of competence acceptable within the medical community of this State. *Accord Chastek v. Anderson*, 83 Ill. (2d) 502, 48 Ill. Dec. 216, 416 N.E. (2d) 247 (1981) and cases collected therein.

Because there is substantial evidence to support the Board's finding that respondent's treatment fell below the standards of competence acceptable within the medical community of this State, we reverse the judgment of the circuit court and reinstate the order of the Board.

Reversed.

HARWELL, CHANDLER, FINNEY and TOAL, JJ., concur.