1601

Jesse A. PURVIS and Bettye S. Purvis, Individually and as Personal Representatives of the Estate of Cynthia Louise Purvis, Appellants v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

(403 S.E. (2d) 662)

Court of Appeals

*Bernard A. Fielding, Sr.*, and *Forrest W. Compton,* Charleston, *for appellants.*

*J.W. Cabaniss,* of *Grimball & Cabaniss,* Charleston, *for respondent.*

Heard Dec. 10, 1990; Decided Feb. 4, 1991.

Certiorari Denied April 24, 1991.

*Per Curiam:*

This is an action seeking reformation of an automobile insurance policy. Jesse A. and Bettye S. Purvis, individually and as personal representatives of the estate of their daughter, Cynthia Louise Purvis, sued State Farm Mutual Automobile Insurance Company after Cynthia was killed when the car in which she was a passenger left the road and collided with a tree. The driver's insurer paid the Purvises $25,000.00, the policy limit. Before negotiating the draft and releasing the driver, they filed a claim under their own State Farm policy for underinsured motorist benefits. State Farm denied the claim, contending the vehicle in which Cynthia was killed was not an underinsured motor vehicle as defined by statute and policy amendment. The trial court entered judgment for State Farm. The Purvises appeal. We affirm.

The Purvises raise two arguments on appeal: (1) the General Assembly's enactment of a statutory definition of "underinsured motor vehicle" did not alter the nature of underinsured motorist coverage in this State; and (2) State Farm's offer of underinsured motorist coverage was ineffective because the renewal notice sent was misleading, did not adequately advise them of the nature of the changes in underinsured motorist coverage, and did not give them a meaningful opportunity to accept or reject the coverage.

The General Assembly enacted the Underinsured Motorist Act in 1978. Act No. 569, 1978 S.C. Acts 1668. The pertinent provisions of the Act were codified at Section 56-9-831 of the South Carolina Code. This Section provided in relevant part:

[Insurance] carriers shall . . . offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist.

At the time this statute was added to the insurance laws, there was no definition of "underinsured motorist" or "underinsured motor vehicle." Consequently, confusion existed as to whether underinsured motorist coverage in this State was "excess" coverage or "reduction" coverage.

"Excess" underinsured motorist coverage provides benefits to an insured under his own policy any time the at fault driver's liability coverage is less than the amount of the claimant's actual damages. The claimant is entitled to benefits equal to the difference between his actual damages and the at fault driver's limits up to the claimant's own underinsured motorist limits. The following example illustrates the mechanics of "excess" underinsured motorist coverage:

> *Example 1* X has underinsured motorist coverage with a policy limit of $30,000.00. X is struck in his car by Y, the at fault driver. X's actual damages are $45,000.00. Y carries minimum liability coverage of $15,000.00 per person. "Excess" underinsured motorist coverage allows X to recover the full $30,000.00 under his own policy because that is the difference between the at fault driver's limits ($15,000.00) and the claimant's damages ($45,000.00).

"Reduction" underinsured motorist coverage provides benefits to an insured under his own policy only when the claimant's underinsured motorist coverage is greater than the at fault driver's liability coverage because the amount of recovery from the claimant's underinsured motorist coverage is reduced by the amount of recovery from the at fault motorist. The following examples illustrate the mechanics of "reduction" underinsured motorist coverage:

> *Example 2* Under the same facts as in Example 1, X has coverage because his underinsured motorist limit ($30,000.00) is greater than Y's liability limit ($15,000.00).

X cannot recover the full $30,000.00 under his policy, however, since his underinsured motorist coverage is reduced by the amount of recovery from the at fault driver's policy, *i.e.*, $15,000.00. Thus, X's total insurance recovery is only $30,000.00, *i.e.*, $15,000.00 less than his actual damage.

*Example 3* Assume the same facts as in Example 1, except X has only $15,000.00 underinsured motorist coverage. "Reduction" underinsured motorist coverage precludes X from recovering under his policy because his underinsured motorist coverage is not greater than Y's liability coverage. X's recovery under his own policy must be reduced by the $15,000.00 recovered from Y, leaving $0.00. Thus, X's total insurance recovery is only $15,000.00, *i.e.*, $30,000.00 less than his actual damage.

Our Supreme Court resolved the "excess" versus "reduction" coverage debate when it answered a certified question from the Fourth Circuit Court of Appeals in *Gambrell v. Travelers Insurance Cos.*, 280 S.C. 69, 310 S.E. (2d) 814 (1983). In that case the Court said that "the purpose of [Section 56-9-831] is to provide coverage where the injured party's damages exceed the liability limits of the at fault motorist." The Court went on to state that there is "no requirement that the insured's underinsured motorist coverage limits must exceed the liability limits of the at fault motorist."

The Supreme Court in *Garris v. Cincinnati Insurance Co.*, 280 S.C. 149, 311 S.E. (2d) 723 (1984), again considered the nature of underinsured motorist coverage in this State and confirmed its holding in *Gambrell.* The Court held:

[U]nderinsured motorist coverage is optional coverage provided by an insurance carrier in the event damages are sustained by the insured in excess of the at fault driver's liability coverage, recovery therefrom being additional to any recovery from the at fault motorist, total recovery not to exceed the damages sustained.

The Court's holdings in *Gambrell* and *Garris* laid down a rule that underinsured motorist coverage in this State was "excess" coverage.

*Gambrell* and *Garris* remained the law until June 4, 1987, the effective date of the first legislation in this State to define "underinsured motor vehicle." *See* Act No. 166, 1987 S.C. Acts 1093, 1117. The pertinent part of the Act was codified as Section 56-9-810 of the South Carolina Code, which set forth the following definition:

> "Underinsured motor vehicle" means a motor vehicle as to which there is bodily injury liability insurance or a bond applicable at the time of the accident in an amount of at least that specified in Section 56-9-820 and the amount of insurance or bond:
> (a) is less than the limit for underinsured motorist coverage under the insured's policy; or
> (b) has been reduced by payments to persons, other than the insured, injured in the accident to an amount less than the limit for underinsured motorist coverage under the insured's policy.

This statute changed the rule in *Gambrell* and *Garris* by making underinsured motorist coverage in this State "reduction" coverage. This definition was in effect both at the time Mr. Purvis renewed his policy and at the time of Cynthia's accident.[1]

A new statutory definition of "underinsured motor vehicle" was later enacted by the General Assembly, codified as South Carolina Code Section 38-77-30(14). *See* Act No. 148, 1989 S.C. Acts 427, 511.

Act 148 amended section 38-77-30(14) to change underinsured motorist coverage in this State from "reduction" coverage to "excess" coverage. The new section 38-77-30(14), which went into effect October 1, 1989, reads as follows:

> "Underinsured motor vehicle" means a motor vehicle as to which there is bodily injury liability insurance or a bond applicable at the time of the accident in an amount of at least that specified in Section 38-77-140 and the amount of the insurance or bond is less than the amount of the insureds' damages.

---

[1] During the period between the renewal and the accident, the General Assembly recodified Section 56-9-810 as Section 38-77-30, but it made no significant changes to the definition of "underinsured motor vehicle."

This definition of "underinsured motor vehicle" remains the law today.

## I.

The automobile insurance policy at issue in this case was renewed on November 14, 1987. South Carolina Code Section 56-9-810 was the law at that time. The Purvises argue that this Section did not alter the nature of underinsured motorist coverage in this State; but that the rule in *Gambrell* and *Garris* declaring South Carolina an "excess" coverage state remained the law.

The underinsured motorist statute construed in *Gambrell* and *Garris* necessarily was construed without consideration of the statutory definition of "underinsured motor vehicle," since at the time those cases were decided a statutory definition did not exist. When Section 56-9-810 became the law, a "reduction" rule went into effect. The General Assembly has the power to prescribe legal definitions by statute, and such definitions are binding upon courts and should prevail. *Brown v. Martin*, 203 S.C. 84, 88, 26 S.E. (2d) 317, 318 (1943). The language of the statutory definition clearly indicates the intent of the legislature was to change underinsured motorist coverage in this State from "excess" coverage to "reduction" coverage. When the terms of a statute are clear and unambiguous, there is no room for construction and courts must apply them according to their literal meaning. *Citizens and Southern Systems, Inc. v. South Carolina Tax Commission*, 280 S.C. 138, 311 S.E. (2d) 717 (1984).

If we were to accept the Purvises' argument that the General Assembly intended South Carolina to remain an "excess" coverage state, we would have to assume the definition included in Section 56-9-810 had no real purpose. We cannot make such an assumption. "[T]his Court must presume that the legislature intended to accomplish something with each statute and not to engage in futile action." *Charleston Television, Inc. v. South Carolina Budget & Control Board*, 296 S.C. 444, 458, 373 S.E. (2d) 892, 900 (Ct. App. 1988), *rev'd on other grounds*, — S.C. —, 392 S.E. (2d) 671 (1990).

## II.

The Purvises also argue that State Farm's offer of underinsured motorist coverage was ineffective because the renewal notice was misleading, failed adequately to advise them of the changes in underinsured motorist coverage, and provided no meaningful opportunity to accept or reject the coverage. We find no merit to any of these contentions.

We note from the outset that this is not a case in which the insurance carrier failed to offer underinsured motorist coverage. The company offered and Mr. Purvis purchased underinsured motorist coverage up to the limits of his liability coverage.

We also note that Mr. Purvis is neither an unwary nor an ignorant insured. He is a college educated man who was employed by an insurance company for two years in which he dealt with policyholders concerning provisions in their policies. No evidence suggests his election to purchase underinsured coverage was other than an informed, voluntary decision.

For the reasons stated, the judgment of the trial court is

Affirmed.

