## 1741

TOWN OF SULLIVANS ISLAND, Appellant v. James H. BYRUM, J. Harold Byrum, Juanita T. Byrum, and Two Thousand Fourteen Corporation, Respondents.

(413 S.E. (2d) 325)

Court of Appeals

*John P. Algar,* Charleston, and *Lawrence A. Dodds, Jr.,* of *Dodds & Hennessy,* Mount Pleasant, *for appellant.*

*Morris D. Rosen,* of *Rosen, Rosen & Hagood,* Charleston, *for respondents.*

Heard Sept. 17, 1991; Decided Jan. 6, 1992.

Reh. Den. Jan. 23, 1992.

*Per Curiam:*

The Plaintiff, Town of Sullivans Island (Town), sought to enjoin the Defendants,[1] Byrums, from using part of their residence as a "Bed & Breakfast" boarding house. The Town also sought to enjoin the Byrums' use of a garage apartment for human habitation. The Town argued that both uses violated the applicable zoning ordinances. The trial judge refused the requested injunctions, and the Town appealed. We reverse and remand for the entry of an order granting both injunctions.

A fire damaged the Byrums' residence in 1983. The Byrums decided to renovate the house and use part of it as a Bed & Breakfast. As a result, the repair work went far beyond the fire damage, including the development of six separate bedrooms and baths. Nothing indicates that the Byrums told the Town of their intended use during the repair process.

At the time of the renovations, § 21-3 of the Town's zoning ordinances defined "permitted home occupation uses" as follows:

> Any use conducted entirely within a dwelling and carried on by the occupants thereof, which use is clearly incidental and secondary to the use of the dwelling for residential purposes and does not change the character thereof, and no person, not a resident of the premises is employed specifically in connection with the activity. Provided, further, that no mechanical equipment is installed or used except such as is normally used for domestic or professional purposes, and that not over twenty-five (25%) percent of the total floor space of any structure is used for home occupation.

This is the second time these parties have been before this Court regarding the Byrums' Bed & Breakfast operation. In the first case, the Byrums' sought a variance from the twenty-five (25%) percent limitation on "home occupation" uses. The Board of Adjustment denied the variance on two grounds: (1) a Bed & Breakfast is not a home occupation; and (2) the operation exceeded the twenty-five (25%) percent limitation on structural usage for home occupations. The Circuit Court re-

---

[1] The defendant, Two Thousand Fourteen Corporation, owns the residence. The Byrums are the sole stockholders in the corporation.

versed both findings on appeal. This Court reversed the Circuit Court and reinstated the Board's denial of the variance, concluding that the Bed & Breakfast operation exceeded the twenty-five (25%) percent limitation. *Byrum v. Board of Adjustment*, 294 S.C. 114, 362 S.E. (2d) 890 (Ct. App. 1987) (*Byrum* I). This Court did not discuss the first issue.

During the pendency of the appeal before the Circuit Court in *Byrum* I, the Town amended its "home occupation" ordinance and specifically prohibited the use of a residence as a boarding house. At the time of this amendment, the Byrums continued to use more than twenty-five (25%) percent of the residence in the Bed & Breakfast operation contrary to both the original and the amended ordinance.

After this Court's decision in *Byrum* I, the Byrums continued to operate the Bed & Breakfast but allegedly reduced the structure usage to less than twenty-five (25%) percent. They applied to the Town for a license, and the Town denied their application. They continued to operate the Bed & Breakfast, and the Town commenced the present action.

The present case raises several issues:

(1) In *Byrum* I, did this Court decide whether a Bed & Breakfast operation is a "home occupation use" permitted under the then-existing zoning ordinance? If so, what did it rule? If not, is a Bed & Breakfast a home occupation?

(2) Assuming a Bed & Breakfast is a "home occupation," does the present operation exceed the twenty-five (25%) percent limitation?

(3) Assuming a Bed & Breakfast is a "home occupation," is the Byrums' operation "grandfathered in" as a nonconforming use so that the amended ordinance does not apply to the Byrums' operation? If not, is the Town estopped from raising this issue?

(4) Is the Town estopped from challenging the use of the garage as an apartment?

The trial judge ruled as follows:

(1) *Byrum* I held that a Bed & Breakfast operation is a home occupation.

(2) The present operation does not exceed the twenty-five (25%) percent limitation.

(3) The Town is estopped from relying on the amended ordinance and its prohibition of boarding houses, because the Town told the Byrums during *Byrum* I that their use was not permitted regardless of the percentage of use.

(4) The Town is estopped from challenging the use of the garage as an apartment, because it knew the apartment was being built but never challenged it.

The trial judge also held that the Byrums could use the garage apartment for family use only. The Byrums do not appeal this ruling.

In *Byrum* I, this Court did not decide the home occupation issue. We only decided the more narrow issue of whether the Byrums were exceeding the twenty-five (25%) percent limitation. We now decide that a Bed & Breakfast is not a home occupation.

The zoning ordinance defined home occupation as quoted herein above. We conclude that the Bed & Breakfast operation is not "clearly incidental and secondary" to the residential use of the property, and that it changed the character of the residence.

The Byrums' renovation of the property included the construction of an apartment within the house where Mr. and Mrs. Byrum would live. This apartment had its own kitchen, bathroom, bedroom, and a small living room.

After the renovation, there were five other bedrooms which were used for the Bed & Breakfast. Each bedroom had its own bathroom, water heater, air conditioner, and heater. The second (large) kitchen was used primarily for the preparation of continental breakfasts for the boarders.

Under these facts, it is clear that the Bed & Breakfast operation dominated the character and use of the residence and, therefore, it is not a home occupation. It is more like a boarding house than a traditional home occupation, such as a craft shop or dressmaker. The Pennsylvania Commonwealth Court recently reached the same result in a remarkably similar case. *Reynolds v. Zoning Hearing Board of Abington Township*, 134 Pa. Commw. 382, 578 A. (2d) 629 (1990).

In calculating the percentage of use, the trial judge erred in excluding the square footage of the upstairs hallway or foyer. The record clearly demonstrates that

all of the upstairs rooms are part of the present Bed & Breakfast operation. Thus, the only use of the hallway is for the Bed & Breakfast operation. When the square footage of the hallway is added into the trial judge's calculations, the present use clearly exceeds the twenty-five (25%) percent limitation.

Even if the Bed & Breakfast operation is a home occupation as contemplated by the original ordinance, and the present operation does not exceed the twenty-five (25%) percent limitation, the amended ordinance is applicable and prohibits any Bed & Breakfast operation. The operation is not a nonconforming use under the amended ordinance, because it was not a conforming use at the time of the amendment, *i.e.*, the Byrums were in violation of the twenty-five (25%) percent limitation at the time of the amendment. *See Troutman v. Aiken*, 213 Ga. 55, 96 S.E. (2d) 585 (1957) (A use cannot be a nonconforming use if it was unlawful at the time of the amendment of the ordinance to prohibit the use). This ruling conforms to the law's general disfavor of nonconforming uses.

Nor should the Byrums be entitled to prevail by reason of the law of estoppel.

As a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy. *South Carolina Dept. of Social Servs. v. Parker*, 275 S.C. 176, 268 S.E. (2d) 282 (1980). The acts of government agents acting within the scope of their authority can give rise to estoppel against the government, but unauthorized conduct or statements do not give rise to estoppel. *South Carolina Coastal Council v. Vogel*, 292 S.C. 449, 357 S.E. (2d) 187 (Ct. App. 1987), *appeal dismissed*, 294 S.C. 80, 362 S.E. (2d) 646 (1987). To prove estoppel against the government, the claiming party must show (1) a lack of knowledge and the means of knowledge about the truth of the matter in question, (2) justifiable reliance on the government's conduct, and (3) a prejudicial change in position. *Midlands Utility, Inc. v. South Carolina Dept. of Health and Envtl. Control*, 298 S.C. 66, 378 S.E. (2d) 256 (1989). When a landowner has actual or constructive notice of a matter, and does not show any misrepresentation or concealment by the government, estoppel will not lie against the government. *South Carolina Pub. Serv. Auth. v. Ocean Forest,*

*Inc.*, 275 S.C. 552, 273 S.E. (2d) 773 (1981) (power company's easement to cut "danger trees"); *South Carolina State Highway Dept. v. Metts*, 270 S.C. 73, 240 S.E. (2d) 816 (1978) (right of way over property); *City of Myrtle Beach v. Parker*, 260 S.C. 475, 197 S.E. (2d) 290 (1973) (existence of a public street).

The Town is not estopped from raising the nonconforming use issue. The record clearly demonstrates that the Town objected to the operation on two grounds at all relevant times. First, it contended that the operation was not a home occupation. Second, it contended that the operation, if permitted as a home occupation, exceeded the twenty-five (25%) percent limitation on home occupations. Moreover, the Byrums clearly knew at all relevant times that their use exceeded the twenty-five (25%) percent limitation; that is why they sought a variance in *Byrum* I. Thus, they could not have detrimentally relied on the position taken by the Town, and reliance is a necessary element of estoppel. In addition, nothing indicates that the Byrums changed their position in reliance on any statement or conduct by the Town.

The cases relied upon by the trial judge and the Byrums are not applicable. They involve situations where an official told a property owner that a use was permitted but later reversed that position. Here, the Town never told the Byrums that their Bed & Breakfast operation was a permitted use.

The Town is not estopped from challenging the use of the garage as an apartment. There is no evidence of any statement or conduct by Town that reasonably misled the Byrums into believing the garage apartment was a permitted use, or that the Town would not contest the use.

The trial judge found that the Town's building inspector must have known about the construction of the garage apartment. He based this finding on the fact that the inspector visited the residence during the construction. He concluded the inspector must have seen the garage apartment construction and must have had plans showing the garage construction. There is no evidence to support these conclusions.

The building inspector testified he never inspected the garage, never saw any plans, and never knew of the garage apartment construction. No one testified that they showed the garage apartment to the inspector or told him about it.

The Town's administrator testified his search of the Town's

records did not reveal any plans on file. He also testified that the Town did not uniformly require plans at the time of the construction. The building permits do not indicate that plans were filed by anyone. No one testified that they submitted any plans. One of the Byrums testified that he assumed the contractor submitted plans, but the contractor did not testify.

Assuming that the building inspector knew of the garage apartment construction, nothing indicates that he had authority to allow such construction or grant a variance to the zoning ordinances.

In summary, we hold the injunctions should be granted. The case is remanded to the Circuit Court of Charleston County for the entry of judgment in accordance with this decision.

Reversed and remanded.

