**TRUSTEES OF GRACE REFORMED EPISCOPAL CHURCH, Plaintiffs,**

v.

**CHARLESTON INSURANCE CO., T.M. Mayfield & Co., and Gay & Taylor, Defendants.**

**Civ. A. No. 2:92–2957–22.**

United States District Court, D. South Carolina, Charleston Division.

May 12, 1994.

Fleet Freeman and Justin O'Toole Lucey, Mt. Pleasant, SC, for plaintiffs.

James Dowell Gandy, III, Charleston, SC, for defendants.

**ORDER**

CURRIE, District Judge.

This action arises from several insurance claims made by Plaintiffs concerning damage to their church building allegedly caused by Hurricane Hugo and an earlier wind storm. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. This matter is presently before the court on Defendant Gay & Taylor's Motion for Summary Judgment and Motion for Partial Summary Judgment. The court has carefully reviewed the record in this matter and heard oral argument. For the reasons stated below, the court denies the Motion for Summary Judgment and grants the Motion for Partial Summary Judgment.

I. PROCEDURAL BACKGROUND

Plaintiffs originally filed this action in state court against the property insurer, Charleston Insurance Company ("C.I.C."), two independent insurance adjusting corporations,

and four individual adjusters. The individual adjusters were dismissed. Plaintiffs then settled with and dismissed C.I.C. This dismissal created complete diversity of citizenship among the remaining parties.[1] The remaining defendants then removed the case to this court pursuant to 28 U.S.C. § 1441 and § 1446(b). Plaintiffs recently settled with and dismissed Defendant T.M. Mayfield & Co., one of the independent insurance adjusting corporations. The only remaining causes of action are against Gay & Taylor for negligent or wrongful adjustment and violation of the South Carolina Unfair Trade Practice Act, S.C.Code Ann. § 39–5–10, *et seq.* ("SCUTPA").

## II.  DISCUSSION

### A.  MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Gay & Taylor argues that Plaintiffs, through their settlement and covenant not to execute with C.I.C., have received the full measure of their damages and are barred from seeking additional recovery. For reasons set forth below, the court denies Gay & Taylor's motion.

■ Plaintiffs sued Defendants in tort. Under South Carolina law, a settlement or covenant not to sue with one tortfeasor does not discharge any other tortfeasor unless its terms so provide or the plaintiff has received full compensation. S.C.Code Ann. § 15–38–50(1); *Vaughn v. Anderson,* 300 S.C. 55, 58, 386 S.E.2d 297, 299 (Ct.App.1989).

■ The covenant not to execute between Plaintiffs and C.I.C. expressly states that it does not discharge any other tortfeasor:

> By signing this Covenant Not to Execute, it is not intended that the Trustees release or discharge from any claims, demands, damages, expenses, actions or causes of action, known or unknown, which Trustees may have as a result of causes of action against any other entity including, but not limited to T.M. Mayfield & Co. or Gay & Taylor, Inc., for all claims, demands, dam-

ages, actions or causes of action, known or unknown, are expressly reserved hereunder.

Covenant Not to Execute, at 2. Furthermore, Gay & Taylor has not established that Plaintiffs have received their full measure of damages from previous settlements. In their answers to Rule 16(b) Interrogatories Plaintiffs seek damages totaling $383,497.40. Plaintiffs claim they have recovered $254,280.12 in settlements. They arguably have uncompensated damages in the sum of $129,217.28. Accordingly, Gay & Taylor's Motion for Summary Judgment is denied.

### B.  MOTION FOR PARTIAL SUMMARY JUDGMENT

■ In its Motion for Partial Summary Judgment, Gay & Taylor contends that Plaintiffs' SCUTPA cause of action for alleged unfair trade practices in adjusting Plaintiffs' insurance claims is precluded because this conduct is exempt from coverage under SCUTPA. The court agrees.

■ Gay & Taylor relies upon § 39–5–40(c) of SCUTPA as the basis for its Motion for Partial Summary Judgment. This section states: "This article does not supersede or apply to unfair trade practices covered and regulated under Title 38, Chapter 55, §§ 38–55–10 through 38–55–410." S.C.Code Ann. § 39–5–40(c). Sections 38–55–10 through 38–55–410 have been recodified at S.C.Code Ann. §§ 38–57–10 through 38–57–320. The declaration of purpose section to Chapter 57 of Title 38, § 38–57–10, provides: "The purpose of this chapter is to regulate trade practices in the business of insurance ... by defining, or providing the determination of, all the practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Chapter 57 clearly is intended to define and regulate all unfair trade practices in the business of insurance. SCUTPA, through § 39–5–40(c), provides a clear exemption for the practices covered by Chapter 57. Therefore, all unfair trade practices regarding the insurance business are regulated

---

**1.** At the time Plaintiffs commenced this action there was not complete diversity of citizenship because one of the individual adjusters and C.I.C. are citizens of South Carolina.

by the Insurance Trade Practices Act, §§ 38–57–10 *et seq.*, and are exempt from the coverage of SCUTPA.

Plaintiffs argue that the § 39–5–40(c) exemption does not apply in the present case for three reasons. First, Plaintiffs contend that prior to removal, the state court ruled on this identical issue, denying Gay & Taylor's motion for summary judgment, and that the prior order became the law of this case. Second, Plaintiffs argue that § 39–5–40(c) only exempts unfair trade practices covered and regulated under Chapter 55 of the Insurance Code and that courts are bound by statutes as written. Third, Plaintiffs contend that even if § 39–5–40(c) removes unfair trade practices covered and regulated under Chapter 57 of the Insurance Code as the basis for a cause of action under SCUTPA, § 39–5–40(c) does not prevent other practices regulated by the Insurance Code from being the basis for a SCUTPA cause of action. The court addresses each of these arguments in turn.

■■■ First, this court is not bound by the prior state court order.[2] An interlocutory state court ruling prior to removal, such as the state court ruling in this case, is subject to reconsideration by a federal court and, while to be treated with respect, is neither final nor conclusive. *General Investment Co. v. Lake Shore & Michigan Southern Ry. Co.,* 260 U.S. 261, 267, 43 S.Ct. 106, 110, 67 L.Ed. 244 (1922); *Thornton,* 703 F.Supp. at 1231. Because this court concludes that Plaintiffs' SCUTPA cause of action is precluded it declines to treat the state court order as the law of the case.

**2.** Whether rulings of an earlier district judge in a case become binding as the "law of the case" upon a subsequent district judge is not a rigid rule, but more a matter of proper judicial administration which varies with the circumstances so that it may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not. *Hill v. BASF Wyandotte Corp.,* 696 F.2d 287, 290 n. 3 (4th Cir.1982); *Thornton v. Cessna Aircraft Co.,* 703 F.Supp. 1228, 1231 (D.S.C.1988), *aff'd,* 886 F.2d 85 (4th Cir.1989).

**3.** This chapter requires insurers to do business in their own names, prohibits discrimination in the issuance of policies, limits insurers making loans

■■■ Second, Plaintiffs' argument that Section 39–5–40(c) applies to Chapter 55 of Tile 38, not Chapter 57 of Title 38, is without merit. Although a court generally should read a statute as literally written, courts will reject such a reading if it would render the statute meaningless, produce absurd results, or defeat the plain legislative intention. *Kiriakides v. United Artists Communications, Inc.,* —— S.C. ——, ——, 440 S.E.2d 364, 366 (1994); *Fort Hill Natural Gas Authority v. Easley,* —— S.C. ——, ——, 426 S.E.2d 787, 788–89 (1993); *Purvis v. State Farm Mut. Auto. Ins. Co.,* 304 S.C. 283, 288, 403 S.E.2d 662, 665–66 (Ct.App.1991). To read § 39–5–40(c) as Plaintiffs propose would render it a nullity. Chapter 55 of Title 38 neither defines nor regulates unfair trade practices in the insurance business.[3] This court must presume that the General Assembly did not intend for § 39–5–40(c) to be meaningless. *See Purvis,* 304 S.C. at 288, 403 S.E.2d at 666.

The Insurance Trade Practices Act, Chapter 57 of Title 38, was designated as Chapter 55 of Title 38 until 1987. It is obvious that when the Insurance Trade Practices Act was recodified as Chapter 57 in 1987, § 39–5–40(c), which has not been amended since 1971, inadvertently was not revised to reflect the change. Recently, another judge of the United States District Court for the District of South Carolina confronted the identical issue and held that § 39–5–40(c) should be read to refer to Title 57 instead of Title 55. *Colonial Life & Accident Ins. Co. v. American Family Life Assurance Co.,* 846 F.Supp. 454, 462 (D.S.C.1994) (Shedd, J.). This court agrees that this is the correct reading of the statute. As Judge Shedd noted:

to their officers and directors, prohibits tontine policies, provides a procedure to revoke an insurer's license if it does not pay a final judgment, prohibits an insurer from doing business in the state if its charter is canceled or revoked, prohibits insuring an uninsurable person with intent to defraud, prohibits presenting false claims for payment, prohibits an insurance agent from having any interest in debits collected for sick, accident or death benefits, and limits the connection between undertakers and life insurers. This chapter does not define any of the activities regulated in the chapter as unfair trade practices.

Under general principles of statutory construction, where as here, the legislature has made a mistake in a reference in a statute to another statute and the real intent of the legislature is manifest and would be defeated by adherence to the terms of the mistaken reference, a court may disregard the mistaken reference or read it as corrected in order to give effect to the legislative intent.

*Id.* at 462 n. 14 (citing *Curry v. Department of Corrections,* 423 So.2d 584, 585 (Fla.Ct. App.1982)).

■ Finally, because § 39–5–40(c) exempts from coverage unfair trade practices regulated by Chapter 57 of Title 38 it exempts from coverage all unfair trade practices regarding the business of insurance. The Insurance Trade Practices Act to which § 39–5–40(c) refers is intended to regulate all unfair trade practices in the business of insurance as evidenced by § 38–57–10. *State v. Thrift,* —— S.C. ——, ——, 440 S.E.2d 341, 354 (1994) (to determine the purpose and scope of an act one can examine the preamble.); *Spartanburg v. Leonard,* 180 S.C. 491, 186 S.E. 395 (1936) (preamble of an act may be used as a guide in determining legislative intent). Therefore, by precluding unfair trade practices covered and regulated under Chapter 57, § 39–5–40(c) exempts from the coverage of SCUTPA all unfair trade practices in the business of insurance.[4] Accordingly, the Motion for Partial Summary Judgment of Gay & Taylor on the SCUTPA cause of action is granted.

IT IS SO ORDERED.

---

4. The fact that Chapter 59 of Title 38 is not included in the exemption of § 39–5–40(c) does not alter this conclusion. Chapter 59 enumerates acts by insurers which constitute improper claims practices. Chapter 59 neither defines nor regulates unfair trade practices in the insurance business. Because § 39–5–40(c) provides an exemption for unfair trade practices in the insurance business there is no reason for it to make reference to Chapter 59. Plaintiffs were free to bring a cause of action under Chapter 59 if they desired.