524 S.E.2d 404

**Charles Dennis WHALEY, Appellant,**

v.

**DORCHESTER COUNTY ZONING BOARD OF APPEALS, Respondent.**

**No. 25029.**

Supreme Court of South Carolina.

Heard May 26, 1999.

Decided Dec. 6, 1999.

572

Susan K. Dunn, of Charleston, for appellant.

G.W. Parker, of Chellis & Frampton, of Summerville, for respondent.

BURNETT, Justice:

Appellant Charles Dennis Whaley (Whaley) challenges the constitutionality of Dorchester County Ordinance No. 96–09.

## FACTS

On February 14, 1996, Whaley began parking his 18–wheel Mack truck (the cab/tractor) overnight and on weekends at his home in the Crestwood Subdivision of Dorchester County. In August 1997, Whaley received a "Cease and Desist" letter from the Dorchester County Planning and Zoning Department which stated parking his commercial vehicle in the residential zone was in violation of Ordinance No. 90–19, as amended by

Ordinance 96–09. He responded to the "Cease and Desist" letter and was granted a hearing.

At the hearing before Respondent Dorchester County Zoning Board of Appeals (the Board), Whaley testified he uses the 18–wheeler to drive back and forth to work everyday. He further testified he performs maintenance on the vehicle at his home. The Board upheld the "Cease and Desist" letter. Shortly thereafter, Whaley was cited for violation of Ordinance 90–19. The Circuit Court affirmed.

## *ISSUES*

I. Did the circuit court err by affirming the decision of the Board because Ordinance 96–09 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

II. Did the circuit court err by affirming the decision of the Board because Ordinance 96–09 is overly broad and vague in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution?

III. Did the circuit court err by affirming the decision of the Board where Ordinance 96–09 produces a taking in violation of the Fifth Amendment to the United States Constitution?

## *DISCUSSION*

Effective January 1, 1997, Ordinance 96–09 amended Ordinance 90–19, the comprehensive zoning ordinance for Dorchester County, to specifically prohibit long-term parking of commercial vehicles in residential areas of Dorchester County. The relevant portions of Ordinance 90–19 and 96–09 are set forth below.

### *Ordinance 90–19*

In pursuance of authority conferred by . . . and for the purpose of promoting health, safety, morals and general welfare of the County: . . .

Article V. Use Groups

NUMBER, NAME, DESCRIPTION AND LIST OF PERMITTED USES

2. Residential, Single–Family

Principal Uses: Single family, detached dwellings

Accessory Uses: Customary incidental uses including but not limited to home occupations, garages, swimming pools, tennis courts, and non-commercial greenhouses.[1]

### Ordinance 96–09

AN ORDINANCE TO AMEND ... COUNTY ... ORDINANCE 90–19 ... TO PROVIDE DESIGN STANDARDS FOR TYPES, SIZE AND WEIGHT LIMITS OF VEHICLES AUTHORIZED TO PARK IN AREAS ZONED RESIDENTIAL.

WHEREAS, IT IS THE DESIRE OF THE COUNTY COUNCIL ... to promote the public health, safety, morals, convenience, prosperity and concern for the general welfare, efficiency and economy in the development of its jurisdiction.

AND WHEREAS ... to promote harmonious and healthful development including adequate provisions for traffic, the promotion of safety and the promotion of good civic design and appearance.

*Limitation of Commercial vehicles parked within Residential Zoned Districts.*

A. The parking of commercial vehicles upon any lot, land, street, right of way, or shoulder thereof, for a period of time exceeding one (1) hour, ... in a Residential Zoned area: ... is prohibited.... It is further provided that this prohibition shall not apply to lots larger than two acres provided adequate screening of such alleged prohibited conduct is undertaken.

B. The intent of this ordinance is to limit the size and weight of commercial vehicles in residential areas and:

 1. to eliminate the visual blight created by large commercial vehicles being indiscriminately parked in residential areas for long periods of time.

---

1. It is not clear whether Whaley's property is zoned R2, single family residential, as stated in the Board's minutes, or whether it is zoned R3, duplexes and patio homes, as stated in the Board's order. While the definition of "accessory uses" varies slightly for a single family residence and a duplex or patio home, the difference is irrelevant to our decision.

2. to minimize physical damage to publicly maintained rights of way.

3. to protect property values and character of property within residential developments.

4. to reduce traffic congestion.

5. to protect children from traffic injuries.

C. For the purposes of this ordinance, *commercial vehicle* is defined as a vehicle whose Tare Weight exceeds 5 tons (10,000 lbs), or a vehicle having more than two axles, or a vehicle greater than 8' in height. Construction equipment and farming equipment of any type are included in this definition.

(Emphasis in original).

 A municipal ordinance is a legislative enactment and is presumed to be constitutional. *Bibco Corp. v. City of Sumter*, 332 S.C. 45, 504 S.E.2d 112 (1998). The burden of proving the invalidity of a zoning ordinance is on the party attacking it and it is incumbent on the attacking party to show the arbitrary and capricious character of the ordinance through clear and convincing evidence. *Id.; see also Peterson Outdoor Advertising v. City of Myrtle Beach*, 327 S.C. 230, 489 S.E.2d 630 (1997) (a strong presumption exists in favor of the validity and application of zoning ordinances). "Zoning is a legislative act which will not be interfered with by the courts unless there is a clear violation of citizen's constitutional rights." *Knowles v. City of Aiken*, 305 S.C. 219, 224, 407 S.E.2d 639, 642 (1991).

## *I.*

 Whaley argues Ordinance 96–09 violates the Equal Protection Clause of the United States Constitution because there is no rational relationship between the legitimate purposes of the ordinance and the classification produced by the ordinance. Specifically, Whaley contends parked commercial vehicles should not be treated differently than commercial vehicles which drive through a residential area.

 The Equal Protection Clause provides: "No State shall .. deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal

protection is satisfied if 1) the classification bears a reasonable relation to the legislative purpose sought to be effected; 2) the members of the class are treated alike under similar circumstances and conditions; and 3) the classification rests on some reasonable basis. *Skyscraper Corp. v. County of Newberry*, 323 S.C. 412, 475 S.E.2d 764 (1996); *Town of Hilton Head Island v. Fine Liquors, Ltd.*, 302 S.C. 550, 397 S.E.2d 662 (1990). The determination of whether a classification is reasonable is initially one for the legislative body and will be sustained if it is not plainly arbitrary and there is any reasonable hypothesis to support it. *Town of Hilton Head Island v. Fine Liquors, Ltd.*, supra. "The fact that the classification may result in some inequity does not render it unconstitutional." *Davis v. County of Greenville*, 313 S.C. 459, 465, 443 S.E.2d 383, 386 (1994).

Whaley has failed to establish Ordinance 96–09 violates equal protection. Prohibiting the long-term parking of commercial vehicles in residential neighborhoods is reasonably related to protecting property values and maintaining the aesthetic appearance of residential areas. Prohibiting commercial vehicles from parking in streets in residential zones reduces traffic congestion. Ordinance 96–09 bears a substantial relationship to the promotion of public health, safety, convenience, prosperity, and the general welfare of persons who reside in single-family residential areas of Dorchester County. Accordingly, it does not violate the Equal Protection Clause of the United States Constitution.

■ Whaley further maintains Dorchester County has selectively enforced the ordinance against "drivers of 18 wheelers," but not against other commercial vehicles who are in violation of the ordinance. We disagree.

■ "To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was· denied to one person while conferred on another. A violation is established only if the plaintiff can prove that the state *intended* to discriminate." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir.1995) (*internal citations omitted* ).

Although Whaley presented eleven photographs of "other large commercial vehicles in the immediate area that were not

subjected to any enforcement action" at the Board hearing, he failed to establish any purposeful discrimination on the part of the planning and zoning officials. *See Butler v. Town of Edgefield,* 328 S.C. 238, 493 S.E.2d 838 (1997) (plaintiff did not establish Equal Protection claim where he failed to allege or set forth any facts which could establish purposeful or intentional discrimination). Accordingly, he has failed to establish the enforcement of Ordinance 96–09 violates equal protection.

## II.

■■■ Whaley contends Ordinance 96–09 is so overly broad and vague that it results in the denial of due process. Specifically, Whaley contends the ordinance is overly broad and/or vague because, since it prohibits construction equipment of any kind in a residential zone, residents may not store tools such as a hammer on their property. We disagree.

Ordinance 96–09 defines "commercial vehicle" as follows:

a vehicle whose Tare Weight exceeds 5 tons (10,000 lbs), or a vehicle having more than two axles, or a vehicle greater than 8' in height. Construction equipment and farming equipment of any type are included in the definition.

Whaley fails to read the definition of "commercial vehicle" in context. Ordinance 96–09 concerns long-term *parking* and, hence, necessarily applies to vehicles. The definition of "commercial vehicle" encompasses vehicles of a certain weight, height, and axle number, and to construction and farming vehicles, regardless of weight, height, or axle number. Contrary to Whaley's argument, Ordinance 96–09 does not apply to the storage of hammers in residential zones. Ordinance 96–09 is not unconstitutionally vague. *Toussaint v. State Bd. of Medical Examiners,* 303 S.C. 316, 320, 400 S.E.2d 488, 491 (1991) ("[a] law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application.").

## III.

■■■ Whaley asserts Ordinance 96–09 results in a taking of his property without just compensation in violation of the due

process clause of the Fifth Amendment to the United States Constitution because he is no longer able to park his Mack truck on his property. We disagree.

■ The Fifth Amendment to the United States Constitution prohibits the taking of private property "for public use, without just compensation." The takings clause applies to the states through the Fourteenth Amendment to the United States Constitution. "[T]he application of a general zoning law to a particular property effects a taking if the ordinance does not substantially advance legitimate [governmental] interests or denies an owner economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 112 (1980) (*internal citations omitted*). "A zoning classification is not an unconstitutional, compensable taking simply because it denies to a landowner the highest and best use of his property." *Moore v. Sumter County Council*, 300 S.C. 270, 272, 387 S.E.2d 455, 457 (1990); see 101A C.J.S. *Zoning & Land Planning* § 476 (1979).

Ordinance 96–09 does not effect a taking of Whaley's property. As noted above, there is a legitimate government interest in limiting traffic and protecting the property values and aesthetic qualities in residential zones. Ordinance 96–09 is substantially related to these purposes. Further, Ordinance 96–09 does not deny Whaley economical use of his land, even though it prohibits him from parking a commercial vehicle on his property. *Moore v. Sumter County Council, supra* (property owner not entitled to best use of property). Ordinance 96–09 does not result in a taking of Whaley's property within the meaning of the Fifth Amendment.

■ Whaley further asserts, even if Ordinance 96–09 is constitutional, he is entitled to park his commercial vehicle in the residential zone as a nonconforming legal use. The Board argues because Whaley was not permitted to park his Mack truck in a residential zone prior to enactment of Ordinance 96–09, he does not have a legal nonconforming use.

■ A landowner acquires a vested right to continue a nonconforming use already in existence at the time of a zoning ordinance absent a showing the continuance of the use constitutes a detriment to the public health, safety, or welfare.

*Daniels v. City of Goose Creek,* 314 S.C. 494, 431 S.E.2d 256 (Ct.App.1993). A use cannot be a nonconforming use if it was unlawful at the time of the amendment of the ordinance prohibiting the use. *Town of Sullivans Island v. Byrum,* 306 S.C. 539, 413 S.E.2d 325 (Ct.App.1992); 101A C.J.S. *Zoning & Land Planning* § 164, p. 500 ("[a] use which was unlawful at the time the ordinance prohibiting such use was enacted is not ordinarily regarded as a nonconforming use."). The burden of proving a nonconforming use is on the party claiming a prior nonconforming use. *Id.* § 154.

Accessory uses are those which are customarily incident to the principal use. *Id.* § 148. "In order to qualify as a use incidental to the principal use of a nonconforming premises, such use must be clearly incidental to, and customarily found in connection with, the principal use to which it is allegedly related." *Id.* § 154, p. 479. An accessory use must be one "so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it." *Borough of Northvale v. Blundo,* 85 N.J.Super. 56, 203 A.2d 721, 723 (1964).

Article V(2) of Ordinance 90–19 provides for uses which are accessory to a single family home in a residential zone. It describes accessory uses as "[c]ustomary incidental uses including but not limited to home occupations, garages, swimming pools, tennis courts, and non-commercial greenhouses." This non-exclusive definition is consistent with the general law as it prohibits any use which is not customarily incident to residential zones.[2]

While other courts have held parking a commercial vehicle in the street or driveway is not an accessory use to a residence, the narrow issue here is whether parking the cab of an 18–wheeler is an accessory use to a residence.[3] We conclude

---

2. The ordinance does not limit accessory uses to physical structures.

3. *See Borough of Northvale v. Blundo, id.* (parking commercial vehicle in residential district is not accessory use); *Facci v. City of Schenectady,* 13 Misc.2d 247, 176 N.Y.S.2d 827 (Sup.1957) (parking 1½ ton truck on premises zoned for residential purposes does not constitute accessory use); *Cook v. Bensalem Township Zoning Bd. of Adjustment,* 413 Pa. 175, 196 A.2d 327 (1963) (parking commercial vehicles at residence was not accessory use of residential lot or customarily incidental to

it is not. The parking of the cab of an 18–wheeler at a residence is not customarily incident to a residential zone, as defined by Article V(2) of Ordinance 90–19, so as to constitute an accessory use. Since Whaley was not entitled to park his Mack truck in the residential zone prior to enactment of Ordinance 96–09, his present use of the property is not a legal nonconforming use.

**AFFIRMED.**

FINNEY, C.J., MOORE, J., concur.

TOAL and WALLER, JJ., dissenting in a separate opinion.

TOAL, Justice (dissenting):

I respectfully dissent. I agree with the majority's observation that Ordinance 90–19 has always regulated more than just physical structures. Article V(2) of Ordinance 90–19 restricted Whaley's property to "principal" and "accessory" uses. The issue is whether Ordinance 90–19's "accessory use" restrictions prevented Whaley from parking his truck at his residence before the amendment by Ordinance 96–09.

Ordinance 96–09 became effective more than eleven months after Whaley began parking his truck at his residence. A landowner acquires a vested right to continue a nonconforming use already in existence at the time of a zoning ordinance. *Daniels v. City of Goose Creek,* 314 S.C. 494, 431 S.E.2d 256 (Ct.App.1993). Amortization and grandfather clauses are two methods available to address activities made nonconforming by the enactment of new zoning ordinances. *See Restaurant Row Associates v. Horry County,* 335 S.C. 209, 516 S.E.2d 442 (1999). In the current case, the County applied neither a grandfathering method nor an amortization process.

The majority errs by applying a common law definition of "accessory use" when Ordinance 90–19 explicitly defines that term. "It is well settled that a legislative body has the power within reasonable limitations to prescribe legal definitions of its own language, and when an Act passed by it embodies the

---

dwelling house within zoning ordinance); 101A C.J.S. *Zoning & Land Planning,* § 150, p. 469 ("[t]he parking of a commercial vehicle on residential property, including the driveway of a home, is not a permissible accessory use.").

definition, it is generally binding upon the Courts." *Windham v. Pace*, 192 S.C. 271, 6 S.E.2d 270, 275 (1939); *see also Fruehauf Trailer Co. v. South Carolina Elec. & Gas Co.*, 223 S.C. 320, 75 S.E.2d 688 (1953); *Brown v. Martin*, 203 S.C. 84, 26 S.E.2d 317 (1943); *Purvis v. State Farm Mut. Auto. Ins. Co.*, 304 S.C. 283, 403 S.E.2d 662 (Ct.App.1991). I can find no logical reason to join the majority and disregard such a well established principle of statutory construction.

In determining whether Whaley's truck violated Ordinance 90–19 prior to the enactment of Ordinance 96–09, the majority chooses to ignore the Ordinance's definition and adopts a definition of "accessory use" found in 101A C.J.S. *Zoning and Planning* § 148 (1979). The majority apparently legislates this common law definition because the Ordinance's "accessory use" definition only addresses physical structures and says nothing about restricting motor vehicles.[1] I do not dispute that Dorchester County had the power to restrict trucks like Whaley's from parking in the zoned area. The passage of Ordinance 96–09 shows that the County knew how to enact such restrictions and that it recognized the need to do so in order to prevent such trucks from parking at residences.

Instead of recognizing that no restrictions existed on motor vehicles in the Dorchester County zoning scheme prior to Ordinance 96–09, the majority goes outside the statute to

---

1. Ordinance 90–19's accessory use definition is as follows:

**Accessory Use, Dwelling or Structure.** A detached building or structure which is detached from and subordinate to a principle building/facility or use on a lot and used for purpose customarily incidental to the principle use, including, but not limited to, garages, greenhouses, guest homes, servants' quarters, custodial and security quarters, swimming pools and tennis courts, cable satellite antenna or other radio transmitting/receiving antenna.

Structures that accommodate living facilities will be temporary in nature and require a majority vote to approve from County Council for the initial installation. Approval of such a request shall not constitute a Rezoning Request to amend the County Land Use (Zoning Map) Plan. The Owner must agree to remove the accessory structure and return the grounds to their original condition within 30 days following a written request from the County Zoning Administrator.

The Zoning Administrator will require the property owner to document the continued need for this accessory use on an annual basis. It is the responsibility of the property owner to ensure this annual review takes place. Failure to have this annual renewal will be grounds for removal.

create a definition under which it can find Whaley's truck prohibited. The majority's decision to resort to a broad common law definition of "accessory use" when the Ordinance's "accessory use" definition does not address motor vehicles ignores the obvious: Ordinance 90–19 did not restrict motor vehicles until Ordinance 96–09 amended it.

Based on the foregoing, I would reverse.[2]

WALLER, J., concurs.

---

**2.** I express no opinion as to how or when the legal nonconforming use may be terminated. Similarly, I express no opinion regarding the effect of any applicable restrictive covenants.