22028

Frances Y. GARRIS, Administratrix of the Estate of Thomas H. Garris, and Patty J. Huntley, Administratrix of the Estate of Roderick L. Huntley, Plaintiffs, v. The CINCINNATI INSURANCE COMPANY, Defendant.

Frances Y. GARRIS, Administratrix of the Estate of Thomas H. Garris, and Patty J. Huntley, Administratrix of the Estate of Roderick L. Huntley, Plaintiffs, v. The STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Defendant.

Frances Y. GARRIS, Administratrix of the Estate of Thomas H. Garris, and Patty J. Huntley, Administratrix of the Estate of Roderick L. Huntley, Plaintiffs, v. The ALLSTATE INSURANCE COMPANY, Defendant.

(311 S. E. (2d) 723)

*C. Dexter Powers, Lawrence B. Orr,* of *Bridges, Bridges & Orr;* and *James C. McLeod, Jr.,* Florence, *for defendants.*

*John P. Gardner, Jr.,* and *Daniel B. Causey, III,* Darlington, *for plaintiffs.*

Jan. 17, 1984.

GREGORY, Justice:

Under the provisions of Rule 46 of the Rules of Practice of the South Carolina Supreme Court, the following questions have been certified to this Court by the United States District Court for the District of South Carolina:

1. What is the definition of underinusred motorists coverage as used in § 56-9-831 of the Code of Laws of South Carolina (1976)?

2. Does § 56-9-831 of the Code of Laws of South Carolina (1976) require that "basic limits" of underinsured motorist coverage of $15,000/30,000/5,000 be offered to all automobile policy holders as well as underinsured motorist coverage up to the limits of the insured's liability coverage?

3. If the statute requires the insurer to offer underinsured motorist coverage in the "basic limits" of $15,000/30,000/5,000, can such coverage on each of the vehicles insured under each Defendant's policy be stacked?

This district court action is a declaratory judgment action brought to determine whether underinsurance is available to the estates of Thomas H. Garris and Roderick Lee Huntley.

Mr. Huntley and Mr. Garris were killed in an automobile accident in Florence County on July 7, 1979. Mr. Huntley was driving a truck owned by Bryce Mechanical Contractors (Bryce) and Mr. Garris was a passenger in the truck. As Mr. Huntley approached a curve, a vehicle driven by David R. Turner, traveling at extremely high speed, crossed the center line and hit the truck. Mr. Turner had a blood alcohol level of .27%. The question of liability is clear.

Mr. Turner's vehicle was covered by a policy of liability insurance with the minimum coverage of $15,000/30,000/5,000 (15/30/5) which was issued by Allstate Insurance Company (Allstate). The damages in this case far exceed Mr. Turner's coverage.

The Bryce truck involved in the accident was insured by Cincinnati Insurance Company (Cincinnati) under a policy which provided coverage for seventeen vehicles. At the time of the accident, Mr. Garris owned a policy of liability insurance issued by Allstate which provided coverage for four vehicles, and Mr. Huntley owned a policy of liability insurance issued by State Automobile Mutual Insurance Company of Columbus, Ohio (State) which provided coverage for two vehicles.

QUESTION I:

What is the definition of underinsured motorist coverage as used in Section 56-9-831 of the Code of Laws of South Carolina (1976)?

Section 56-9-831 provides in pertinent part:

> [Automobile insurance] carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage *to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist.* (Emphasis added).

The purpose of construing a statute is to ascertain the intention of the legislature. *See* cases collected in 17 West's South Carolina Digest, *Statutes*, Key No. 181(1). Where the terms of a statute are clear and unambiguous, there is no room for construction and courts must apply them according to their literal meaning. *Home Building & Loan Association v. City of Spartanburg*, 185 S. C. 313, 194 S. E. 139 (1938). The language of the statute clearly indicates underinsured motorist coverage is optional coverage provided by an automobile insurance carrier for instances where damages are sustained by an insured in excess of the liability limits of the at-fault driver.

Defendants Cincinnati, Allstate, and State, relying on an Interpretive Bulletin issued by the Department of Insurance, contend the coverage is limited to situations where the insured's underinsurance coverage is greater than the at fault motorist's liability coverage because the amount of the recovery from the insured's underinsurance coverage is offset by the amount of recovery from the at-fault motorist.

An Interpretive Bulletin is not binding on the courts. Underinsured motorist coverage is controlled by and subject to our underinsured motorist act, and any insurance policy provisions inconsistent therewith are void, and the relevant statutory provisions prevail as if embodied in the policy. *See Ferguson v. State Farm Mutual Automobile Ins. Co.*, 261 S. C. 96, 198 S. E. (2d) 522 (1973).

In *Ferguson* this Court held an insurance policy provision which allowed the amount paid under uninsured motorist coverage to be offset by amounts paid or

payable under Workers' Compensation law illegal, contrary to public policy, and of no force and effect. This Court followed the general rule that an uninsured motorist endorsement providing for the reduction of workers' compensation benefits received by the insured was void or invalid and unenforceable on the ground that such provision reduced the effective coverage below that required by the statute and was contrary to public policy. While underinsured motorist coverage is not mandated by statute, we think it is contrary to public policy to offset the amount an insured can recover under his underinsured motorist coverage by the at-fault motorist.

Accordingly, we hold underinsured motorist coverage ■ is optional coverage provided by an insurance carrier in the event damages are sustained by the insured in excess of the at-fault driver's liability coverage, recovery therefrom being additional to any recovery from the at-fault motorist, total recovery not to exceed the damages sustained.

QUESTION II:

Does Section 56-9-831 of the Code of Laws of South Carolina (1976) require that "basic limits" of underinsured motorist coverage of $15,000/30,000/5,000 be offered to all automobile policy holders as well as underinsured motorist coverage up to the limits of the insured's liability coverage?

Section 56-9-831 of the Code requires insurance carriers to offer underinsured motorist coverage to its policy holders; however, unlike liability insurance and uninsured motorist coverage, underinsured motorist coverage is not mandatory. *See* §§ 56-9-820 and 56-9-830 of the Code.

Defendants apparently offered the plaintiff's dece- ■ dents underinsured motorist coverage in amounts greater than 15/30/5, reasoning that 15/30/5 coverage would be meaningless because it would be offset by recovery from the at-fault insured who is required to carry at least 15/30/5 liability insurance. However, we concluded in Question I that an offset is not allowed; therefore, underinsured motorist coverage in any amount up to the insured's liability coverage must be offered to a policyholder.

QUESTION III:

If the statute requires the insurer to offer underinsured

motorist coverage in the "basic limits" of $15,000/30,000/5,000, can such coverage on each of the vehicles insured under each Defendant's policy by stacked?

Section 56-9-831 of the Code provides in pertinent part:

> If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage. Coverage on any other vehicles shall not be added to that coverage.

The above question presupposes "basic limits" coverage is coverage in the amount of 15/30/5. While we have determined that there is no required minimum or basic limits coverage of underinsured motorist coverage, a study of Chapter 9, Title 56 indicates "basic limits" coverage is coverage in the amount of 15/30/5.

By expressly stating underinsurance coverage in excess of 15/30/5 cannot be stacked, the legislature made clear its intent that underinsurance coverage not exceeding 15/30/5 can be stacked.[1] *See Gambrell v. Travelers*, S. C. 310 S. E. (2d) 814 (1983).

Finding underinsurance coverage in amounts not exceeding 15/30/5 on each vehicle covered under an insurance policy can generally be stacked, we now consider each defendant individually.

The vehicle involved in the accident in which plaintiff's decedents were riding was owned by Bryce and insured by Cincinnati under a policy covering numerous vehicles. Plaintiffs assert they can stack the coverage on every vehicle under the policy.

---

[1] Defendants cite *Nationwide Mutual Insurance Co. v. Bair*, 257 S. C. 551, 186 S. E. (2d) 410 (1972) to support their position that underinsurance coverage in any amount is not stackable. In that case, this Court held uninsured motorist coverage could not be stacked; however, since that case was decided, Section 56-9-831 was enacted, thus, the question of whether uninsured motorist coverage can be stacked may be answered affirmatively if the question arises again.

First, we must decide what class within which the decedents fall. There are two classes of insureds: (1) the named insured, his spouse and relatives residing in his household while in a motor vehicle or otherwise, i.e., at all times; and (2) any person using, with the consent of the named insured, the motor vehicle to which the policy applies and a guest in the motor vehicle. Section 56-9-810 of the Code; *Davidson v. Eastern Fire and Casualty Co.*, 245 S. C. 472, 141 S. E. (2d) 135 (1965). If the decedents are members of the first class, they would be insured with respect to all vehicles covered under the policy issued by Cincinnati. If they are members of the second class, they are insureds only with respect to the vehicle in which they are riding. Thus, plaintiffs can stack the coverage only if the amount of underinsured motorist coverage does not exceed 15/30/5 and if the decedents are members of the first class of insured.

We hold the decedents are members of the second class. Section 56-9-831 of the Code, as applicable to defendants State and Allstate, provides:

> If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage. Coverage on any other vehicles shall not be added to that coverage.

The obvious intent of the legislature is to allow insureds or named insureds to take advantage of the benefit of their bargain with their insurance carrier when they are injured by an underinsured motorist and their vehicle is not involved in the accident. But, the recovery here is limited to the extent of coverage on one vehicle with the underinsured motorist coverage, as the decedents are members of the second class. Thus, plaintiffs cannot stack the coverage of the other vehicles under the policies issued to them, but may only recover benefits on one vehicle with the coverage.

LEWIS, C. J., and LITTLEJOHN, NESS and HARWELL, JJ., concur.