**ALLSTATE INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**Jean B. SKEETERS, Administratrix of the Estate of Eugene Skeeters, Jr., deceased; Kay Neal Smith; Philip Glen Smith, Defendants–Appellants.**

**No. 87–2102.**

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1988.

Decided May 5, 1988.

Gary L. Compton, Spartanburg, S.C. (Phillip D. Sasser, Green & Sasser, Conway, S.C., on brief), for defendants-appellants.

John S. Wilkerson, III (Turner, Padget, Graham & Laney, Columbia, S.C., on brief), for plaintiff-appellee.

Before PHILLIPS and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WILKINS, Circuit Judge:

Jean B. Skeeters, administratrix of the estate of Eugene Skeeters, Jr., appeals from a declaratory judgment holding that Allstate Insurance Company owed no duty of payment under an underinsured motorist policy. We affirm.

## I.

Eugene Skeeters, Jr. died from injuries sustained when the motorcycle he was operating collided with an automobile owned by Philip Smith and driven by his wife, Kay Smith. Skeeters' estate subsequently brought suit in state court alleging that Kay Smith's negligent operation of the automobile proximately caused the accident. It also charged liability on the part of Philip Smith on the basis of the family purpose doctrine. The alleged damages greatly exceeded the Smiths' insurance protection under a liability policy with State Farm Insurance Company in the amount of $20,000.00. While Kay Smith was virtually judgment proof, Philip Smith held assets of approximately $400,000.00 in his name.

Since Eugene Skeeters' policy with Allstate contained an underinsured motorists provision in the amount of $25,000.00, Allstate retained an attorney to represent its interest in the litigation. The attorneys for Allstate and State Farm cooperated during the discovery and pretrial phases of the case by, for example, sharing the costs of employing an accident reconstructionist. After discovery was completed, Allstate informed both the attorney for State Farm and the attorney for Skeeters' estate that it would challenge the Smiths' alleged liability.

On the day of trial and without the knowledge or consent of Allstate, a settlement agreement was reached.[1] The settlement called for Kay Smith to execute a confession of judgment in favor of Skeeters' estate for $87,500.00, to be satisfied in

---

1. The contract of insurance expressly provided that "Underinsured Motorists Coverage [does not] apply ... to any person who makes a settlement without [Allstate's] written consent." During oral argument appellants' attorney stated that exclusion of Allstate from settlement discussions was the act of State Farm's attorney. However, he conceded that if Allstate's attorney had been present and objected they would have nevertheless proceeded with the settlement agreement, understanding fully the potential problems it might cause.

part by State Farm's payment of its policy limit ($20,000.00), and payment of $42,-500.00 by Philip Smith. In exchange, Skeeters' estate executed a covenant not to sue Kay Smith and agreed to a dismissal of the action with prejudice as to Philip Smith.

The attorney for Skeeters' estate then made written demand upon Allstate to tender payment of its full policy limit of $25,000.00 underinsured motorists coverage. Allstate filed a declaratory judgment action, contending that the agreement between Skeeters' estate, State Farm and the Smiths deprived it of its subrogation rights. Allstate argued that the settlement agreement violated subrogation principles of statutory, contractual, and equitable origins and left it with a cause of action only against Kay Smith, who was essentially judgment proof. The district court declared that Allstate had no duty to pay the claim.

## II.

■ Uninsured and underinsured motorists coverage protects against loss from the inability to collect valid tort claims against uninsured motorists, or against responsible parties with insufficient liability insurance. At the time of Skeeters' fatal accident and the hearing before the district court, insurance companies were required to offer both types of coverage to an insured. S.C.Code Ann. § 56–9–831 (Law.Co-op.1976 & Supp. 1984). Minimum uninsured coverage was mandatory and underinsured coverage was available at the option of the insured. *Id.; Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 154, 311 S.E.2d 723, 726 (1984).

■ When the district court issued its order on May 18, 1987, section 56–9–831 read, in pertinent part: "Benefits paid pursuant to this section shall be subject to subrogation and assignment." In June, 1987, this statute was recodified and amended to read: "Benefits paid pursuant to this section are not subject to subrogation and assignment." [2] S.C.Code Ann. § 38–77–160 (Law.Co-op.Supp.1987). Relying on *Taylor v. Murphy*, 293 S.C. 316, 360 S.E.2d 314 (1987), Skeeters' estate argues that the repeal of the former language dealing with subrogation rights of the underinsurer is retroactive in application and abrogated Allstate's right of subrogation. Thus, it contends that without a right of subrogation no justification exists for Allstate's refusal to pay the underinsured claim.

Where a statute "violates a contractual obligation, creates a new right, or divests a vested right," it is applied prospectively. *Hooks v. Southern Bell Tel. & Tel.*, 291 S.C. 41, 351 S.E.2d 900, 902 (App.1986); *Smith v. Eagle Constr. Co.*, 282 S.C. 140, 143–44, 318 S.E.2d 8, 9–10 (1984) (citing *Byrd v. Johnson*, 220 N.C. 184, 16 S.E.2d 843, 846 (1941)).

Independent of, but consistent with the statute in effect when final judgment was entered, Allstate and Skeeters were parties to a contract which contained a subrogation clause and provided that:

> [Allstate] may require [Skeeters] to take proper action to preserve all rights to recover damages from anyone responsible for the [injury].
>
> . . . .

---

**2.** On June 4, 1987, the Governor of South Carolina signed Act No. 166 of 1987, effective immediately, which read as set forth above. 1987 S.C. Acts 1092, 1117–18. On June 5, 1987, as part of the reorganization of statutes dealing with insurance matters the Governor signed Act No. 155 intending to recodify Title 38 of the Code, dealing with insurance and repealing many provisions in the South Carolina Code of 1976. 1987 S.C. Acts 385. Section 38–77–160 is set forth in the official Acts and provides that "[b]enefits paid pursuant to this section are subject to subrogation and assignment." 1987 S.C. Acts at 985. This provision took effect January 1, 1988. *Id.* at 1073. It appears that through

this provision the South Carolina legislature intended to repeal section 56–9–831 and recodify it as renumbered under section 38–77–160. *See* S.C.Code Ann. title 56, art. 7 editor's note (Law. Co-op.Supp.1987). We need not address the legislature's intent in returning section 38–77–160 to its former language concerning underinsurer subrogation rights, or the effects of a contradiction in the language of the Acts and Joint Resolutions and the South Carolina Code as it now appears, for we conclude that the statute as it appeared from June 4, 1987 through the end of that year did not apply retroactively to this case.

[Skeeters'] rights of recovery from anyone else become [Allstate's] up to the amount [Allstate has] paid.

....

All rights of recovery against any legally responsible party or insurer must be preserved for [Allstate's] benefit.

Under the terms of the policy Allstate had a contractual right of subrogation, and Skeeters' estate had a contractual obligation to preserve and protect this right. Section 38–77–160 may not apply retroactively to void preexisting rights and duties under a valid contract.

### III.

■ Skeeters' estate additionally argues that, assuming the repeal of section 56–9–831 was not retroactive, there still was no right of subrogation against a party liable to the insured under the family purpose doctrine. The argument is grounded in the language of S.C.Code Ann. § 56–9–870 (Law.Co-op.1976): [3]

An insurance carrier paying a claim under the uninsured motorist provision required by § 56–9–830 shall be subrogated to the rights of the insured to whom such claim was paid against any and every person causing such injury, death or damage to the extent that payment was made; *provided,* that such insurance carrier shall pay its proportionate part of any reasonable costs and expense incurred in connection with any recovery, including reasonable attorneys' fees.

Skeeters' estate argues that this statute is *in pari materia* with section 56–9–831 and that it therefore defines the extent of Allstate's subrogation interest. It contends that since Philip Smith was not the person actually causing injury, death or damage, Allstate has no subrogation claim against him. We disagree.

The provision is explicitly addressed to subrogation rights of uninsured motorist insurance carriers, rather than underinsured motorist carriers. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. *Davis v. Doe,* 285 S.C. 538, 331 S.E.2d 352 (1985); *Garris v. Cincinnati Ins. Co.,* 280 S.C. 149, 311 S.E.2d 723 (1984). The statute plainly does not apply to the subrogation rights of Allstate, the underinsured motorist carrier. Even assuming ambiguity, "[a] well-established rule of statutory construction is 'expressio unius est exclusio alterius,' which means that the enumeration of particular things excludes the idea of something else not mentioned." *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Parker,* 282 S.C. 546, 554, 320 S.E.2d 458, 463 (Ct.App.1984). The enumeration of uninsured carrier subrogation rights reasonably excludes from the scope of the statute underinsured carrier subrogation rights which are unmentioned.

■ Finally, assuming that the provision applies to Allstate's subrogation rights, we agree with the reasoning of the district court that the only reasonable interpretation of the word "causing" in section 56–9–870 would be "liable for" injury, death or damage. Courts will not apply the ordinary meaning of the words in a statute, however plain, when to do so will lead to absurd or unreasonable results. *State ex rel. McLeod v. Montgomery,* 244 S.C. 308, 136 S.E.2d 778, 782 (1964). It would be irrational for the statute, absent a clear and express contrary intent, to arbitrarily exclude subrogation rights of insurers in claims against those held responsible on the basis of vicarious or imputed liability.

AFFIRMED.

---

**3.** Recodified at S.C.Code Ann. § 38–77–190 (Law.Co-op.Supp.1987).