23371

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant v. Phyllis HORRY and Vanessa Richardson, as Personal Representatives of the Estate of Gloria Richardson Gray, Respondents.

(403 S.E. (2d) 318)

Supreme Court

*Henry E. Grimball* and *Francis E. Grimball,* both of *Grimball & Cabaniss,* Charleston, *for appellant.*

*Richard C. Bell,* of *Bell and McNeill,* Mount Pleasant, and *Desa A. Ballard,* of *Ness, Motley, Loadholt, Richardson & Poole,* Barnwell, *for respondents.*

Heard Jan. 22, 1991; Decided April 1, 1991.

Rehearing Denied May 8, 1991.

TOAL, Justice:

This case involves whether the respondents are entitled to underinsured motorist (UIM) insurance benefits under the statutory law in effect at the time of the automobile accident here in question. We are constrained to hold that the now-repealed statutory law which controls the respondents' rights to UIM coverage precludes their recovery. We accordingly reverse.

## FACTS

This is a declaratory judgment action brought by State Farm Mutual Automobile Insurance Company (State Farm) to determine whether UIM coverage is available to Vanessa Richardson, the Personal Representative of decedent Gloria Richardson Gray, on two policies of insurance issued to the decedent's sister, Phyllis Horry.

At the time of her death on July 13, 1988, decedent Gray resided with her daughter, Richardson, and her sister, Horry, in Charleston County. Horry owned two policies with State

Farm, each covering a different automobile. Each policy had UIM coverage with limits of 25,000/50,000/25,000. Gray was killed when she was struck by a vehicle driven by Samuel Johnson. Johnson had a single limit policy of $35,000 with the South Carolina Insurance Company. Damages arising out of Gray's death exceeded the liability coverage provided under Johnson's policy.

The lower court ruled against State Farm, finding that under applicable statutory law and case law, UIM coverage was available. State Farm timely appealed.

### LAW/ANALYSIS

We expressly approve of and adopt as controlling here the Court of Appeals' recent opinion in *Purvis v. State Farm Mut. Aut. Ins. Co.*, Op. No. 1601, — S.C. —, —, — S.E. (2d) —, — (S.C. Ct. App. filed February 4, 1991) (Davis Adv. Sh. No. 3 at 3).

South Carolina Code Ann. § 38-77-160 (1976, as amended),[1] which became effective on July 9, 1978, provides:

> Such [automobile insurance] carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist.

In *Gambrell v. Travelers Ins. Co.*, 280 S.C. 69, 310 S.E. (2d) 814 (1983), this Court first interpreted § 38-77-160. We held that the purpose of UIM coverage under the statute was "to provide coverage where the injured party's *damages* exceed the *liability limits* of the at-fault motorist." (emphasis added) 280 S.C. at 71, 310 S.E. (2d) at 816. *See also Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E. (2d) 723 (1984).

In 1987 the legislature enacted § 38-77-30(14), which was in force at the time of Gray's death. This statute, for the first time, defined an "underinsured motor vehicle." It did so thusly:

> "Underinsured motor vehicle" means a motor vehicle as to which there is bodily injury liability insurance or a

---

[1] Formerly § 56-9-831 (1976).

bond applicable to the time of the accident in an amount of at least that specified in Section 38-77-140 [the minimum liability limits required by law] and the amount of the insurance or bond: (a) is less than the limit of underinsured motorist coverage under the insured's policy; or (b) has been reduced by payments to persons, other than the insured, injured in the accident to an amount less than the limit for underinsured motorist coverage under the insured's policy.

This section is clearly defining an at-fault driver's car as "underinsured" only if: (a) its liability limits are less than the UIM coverage limits carried by the "victim's" car; or (b) its liability limits are less than the UIM coverage due to payments out of it to other claimants injured in the same accident.

In connection with the passage of this statute, in 1988 the legislature enacted § 38-73-1105. This statute stated, in pertinent part:

The definition of "underinsured motor vehicle" contained in Item (14) of Section 38-77-30 may not be used by an insurer unless the insurer reduces his rate for [UIM] coverage by an amount determined appropriate by the Commissioner and refunds any such premium that the Commissioner determines is necessary to correspond with the *new* definition. . . .

(emphasis added). This statute was also in force at the time the parties' respective rights in this case vested.

As stated above, the legislature had never defined the term "underinsured motor vehicle" prior to its passage of § 38-77-30(14). Yet, the legislature made reference in § 38-73-1105 to § 38-77-30(14) as containing the "new" definition. Clearly, the legislature was referring to the definition of "underinsured motor vehicle" this Court had constructed through *Gambrell* and *Garris*, *supra*. In other words, § 38-73-1105 makes reference to the definition of underinsured motor vehicle as adopted in § 38-77-30(14) as "new" when compared with the *existing* implied legal definition of such a vehicle, as pronounced by this Court in *Gambrell* and *Garris*. Thus, it is clear the legislature meant to change the law.

We are persuaded by State Farm's argument that § 38-73-

1105 contemplated that the scope of UIM coverage created by the new definition of underinsured motor vehicle in § 38-77-30(14) gave less protection generally to the public; and that thus premium rates from those insurers using the § 38-77-30(14) definition should fall.[2] It is therefore clear to us that the legislature consciously chose via §§ 38-77-30(14) and 38-73-1105 to define the scope and nature of UIM coverage differently from our definition of such in *Gambrell* and *Garris*.

We therefore reject the respondents' assertion that § 38-77-30(14) addresses only the definition of an UIM *vehicle,* and did not change the law as to UIM *coverage.* We could agree with this contention only if we completely ignore the plain language of § 38-77-30(14) and its companion, § 38-73-1105. The respondents point to a distinction without a difference. While §§ 38-77-30(14) and 38-73-1105 do not expressly define UIM "coverage," it is obvious that the sole purpose of the statutes is to redefine such coverage by changing the definition of UIM vehicle and by requiring corresponding reductions in premiums for those insurers taking advantage of the new UIM vehicle definition.

The Court of Appeals' opinion in *Purvis v. State Farm Mut. Aut. Ins. Co.,* — S.C. —, —, — S.E. (2d) —, — contains a well written and comprehensive review of how this state moved from being an "excess" coverage state (under *Gambrell)* to a "reduction" coverage state (by the enactment of § 38-77-30(14)) and then back to an "excess" coverage state (with the subsequent amendment to § 38-77-30(14)).[3] As stated in *Purvis,* "excess" UIM coverage "provides benefits to an insured under his own policy at any time the at fault driver's liability coverage is less than the amount of the claimant's actual damages." *Id.* at —, — S.E. (2d) at —. "Reduction" UIM coverage "provides benefits to an insured under his own policy only when the claimant's underinsured motorist coverage is greater than the at fault driver's liability coverage because the amount of recovery from the claimant's underinsured mo-

---

[2] It is stipulated that State Farm did adopt the new definition of underinsured motor vehicle in its policies and that State Farm followed all appropriate procedures in doing so.

[3] In 1989 § 38-77-30(14) was amended to provide: " 'Underinsured motor vehicle' means a motor vehicle as to which there is bodily injury liability insurance ... in an amount [at least at the minimum limits] ... and the amount ... is less than the amount of the insured's damages."

torist coverage is reduced by the amount of recovery from the at fault motorist." *Id.* at —, —, — S.E. (2d) at —, —.

Accordingly, we hold the respondents are not entitled to UIM coverage under the statutory law in effect at the time the parties' respective rights vested. The judgment of the lower court is therefore REVERSED.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.