Carol J. HOLT and Michael
P. Holt, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant.

Civ. A. No. 2:94–1418–18.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 17, 1994.

Edward Paul Gibson, Charleston, SC, for plaintiffs.

Max Mahaffee, Charleston, SC, for defendant.

### ORDER

NORTON, District Judge.

This matter is before the court on cross motions for summary judgment. This is an underinsured (UIM) insurance motorist case based on South Carolina law. The issue presented is whether the Defendant, State Farm, complied with South Carolina law and made a meaningful offer of UIM to the Plaintiffs. Plaintiffs allege that the offer was defective and ask the court to reform three State Farm policies to provide UIM coverage for injuries Ms. Holt sustained in an automobile accident.

## A. Facts

The facts of this case are not in dispute. Plaintiff Carol J. Holt was injured in an automobile accident on July 26, 1993, while driving a 1989 Oldsmobile Eighty–Eight. The parties responsible for the accident did not have adequate liability insurance to pay fully for the injuries she received as a result of the accident. At the time of the accident, Plaintiffs Carol and Michael Holt had State Farm automobile insurance coverage on three vehicles—the 1989 Oldsmobile Eighty–Eight involved in the accident, a 1984 Nissan pick-up truck, and a 1984 Pontiac Fiero.

Plaintiffs did not have UIM on any of these vehicles. In fact, on each of the three automobile policies purchased by Plaintiffs, it is undisputed that Plaintiff Michael Holt had checked the appropriate box rejecting UIM for his vehicles. On September 8, 1989, Mr. Holt originally rejected UIM coverage for the Oldsmobile on a form used by State Farm prior to December 1, 1989. In part, that form stated:

Underinsured motor vehicle Insurance provides coverage in the event that damages for bodily injury and property damage are sustained in excess of the limits available to the at-fault owner or operator of an underinsured motor vehicle. An underinsured motor vehicle is one that has available liability coverage limits that are less than the insured's underinsured motor vehicle coverage limits.

On that pre–1989 offer form, Mr. Holt had the option to check one of the following sentences:

I have been offered the right to purchase Underinsured Motor Vehicle Coverage up to the limits of my liability coverage, and instead I select lesser limits of $_____/ $_____/$_____.

I may reject Underinsured Motor Vehicle Coverage and I reject such coverage.

Mr. Holt checked the rejection sentence above continuing his history of rejecting offered UIM coverage on his vehicles.[1]

On July 1, 1989, the South Carolina Legislature enacted S.C.Code section 38–77–350 (Law. Co-op.Supp.1993). That statute provides as follows:

(A) Not later than September 1, 1989, the Chief Insurance Commissioner **shall** approve a form which automobile insurers **shall** use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form **must be used by insurers** for all new applicants after December 1, 1989. The form, at a minimum, must provide for each optional coverage required to be offered:

(1) a brief and concise explanation of the coverage,

(2) a list of available limits and the range of premiums for the limits,

(3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of the coverage he desires,

(4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages,

(5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

(B) If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.

.　　.　　.　　.　　.

(D) Compliance with this section satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and no persons, including, but not limited to, an insurer and insurance agent is liable in an action for damages on account of the

---

1. It is also undisputed that on two separate occasions in 1987, Mr. Holt signed and rejected UIM on very similar State Farm forms for a 1984 Olds Cutlass Cierra.

selection or rejection made by the named insured.

S.C.Code Ann. § 38–77–350 (Law.Co-op. Supp.1993) (emphasis added).

In order to comply with this statute, State Farm drafted new optional coverage forms and mailed them to the South Carolina Department of Insurance for approval. The South Carolina Department of Insurance approved State Farm's new offer forms, and its approval is noted on the State Farm correspondence that originally requested approval by a stamp, which states: "APPROVED, November 20, 1989, STATE OF SOUTH CAROLINA, DEPARTMENT OF INSURANCE." Relying on this approval and S.C.Code section 38–77–350, State Farm as **required** by statute started using this form for all UIM offers after December 1, 1989.

On four separate occasions over a period of four years, Mr. Holt signed and dated the new policy form rejecting UIM. First, he signed the form and rejected UIM for the Oldsmobile on January 3, 1990. On February 10, 1992, he signed and rejected UIM coverage for the Pontiac Fiero. On July 26, 1993, Ms. Holt was involved in the accident in the Oldsmobile. Even after the accident, Mr. Holt continued to reject UIM coverage on his vehicles using the approved State Farm form. He signed and rejected UIM for the Nissan pick-up on April 1, 1994, and again rejected UIM coverage on the Fiero on April 1, 1994. The Holts filed this lawsuit on May 20, 1994, claiming the UIM offer for the Oldsmobile was ineffective and requesting the court to reform the policy to include UIM.

The dispute in this case concerns the offers that State Farm made for UIM coverage on all three Holt vehicles because the Holts ask the court to reform these policies to include UIM so that they might stack the UIM in equivalent amounts of their minimum liability policies. In evaluating these offers, the court

will focus on the offer form used for the 1988 Olds although the applicable language in all three offer forms appears to be the same with the exception of differences in the dollar amounts associated with the listed optional premiums. That form included a chart of semi-annual premiums for UIM coverage and the following explanations:

**Underinsured Motorist Vehicle (Coverage W)**

Underinsured Motor Vehicle (Coverage W) can pay you or your passengers for bodily injury and property damage resulting from an accident for which an underinsured driver is legally responsible. Coverage W is being changed to an excess coverage effective October 1, 1989.

Here's how Underinsured Motor Vehicle Coverage works. If the other driver is at fault in an accident and damages for bodily injury or property damage to you or your passengers exceed the amount of that driver's liability policy, Coverage W can pay those excess damages up to the limits you have chosen. You or your passenger can never collect more than the actual amount of damages.

**About Available Limits For Uninsured Motor Vehicle (Coverage U) and Underinsured Motor Vehicle (Coverage W).** The minimum Coverage U limits required in South Carolina are $15,000 per person, $30,000 per accident for bodily injury and $5,000 for property damage (subject to a $200 property damage deductible). However, you may purchase Coverage U with limits up to your Liability (Coverage A) limits for bodily injury and property damage.

You may also purchase Coverage W with limits up to your Liability (Coverage A) limits for bodily injury and property damage.

The following chart shows the premiums for Coverage U [2] and Coverage W:

**2.** The chart included a list of the premiums for UM coverage, but they have been omitted by the court.

| Bodily Injury Per Person/Per Accident/ Property Damage | | | Underinsured Motor Vehicle (Coverage W ) |
|---|---|---|---|
| $15,000/ | $30,000/ | $5,000 | $ 1.00 |
| $20,000/ | $40,000/ | $5,000 | $ 9.00 |
| $25,000/ | $50,000/ | $5,000 | $10.00 |
| $50,000/ | $100,000/ | $5,000 | $16.00 |
| $100,000/ | $300,000/ | $5,000 | $24.00 |
| $250,000/ | $500,000/ | $5,000 | $35.00 |

The form also included a section that quoted semi-annual premiums for property damage UIM coverage in limits above $5,000 in the increments of $10,000, $25,000, and $50,-000. Mr. Holt elected the minimum liability limits for the Oldsmobile of $15,000/$30,000/$5,000, but rejected all variations of UIM.

Plaintiffs agree that the State Farm offer complied in part with S.C.Code section 38–77–350 by including a brief and concise explanation of the UIM coverage, a space for the insured to sign which acknowledges that the insured was offered the additional coverage, and the Insurance Department's mailing address and telephone number that the applicant could use if the applicant had any questions that the insurance agent was unable to answer. However, Plaintiffs argue that the form was not an "effective" offer of UIM under South Carolina law because it failed to offer UIM coverage in "any amount up to" the insured's liability coverage. Because this court finds the UIM offer complied with the statutory law and believes Plaintiffs' argument to be without merit and not commercially reasonable in light of S.C.Code section 38–77–350, this court grants summary judgment for Defendant State Farm.

### B. Summary Judgment Standard

To grant a motion for summary judgment, this court must find "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–23 (4th Cir.1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### C. Analysis

Having determined that a federal court must apply state law, the federal court must apply the law whether declared "by its legislature in a statute or by its highest court in a decision." *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). However, the issue before this court appears to be a novel issue of law in South Carolina. There have not been any cases to date attempting to resolve how the case law interpreting the UIM requirements of S.C.Code section 38–77–160 can be balanced with the conclusive presumption of validity guaranteed to an insurance company that complies with the mandates of S.C.Code section 38–77–350. Even in the absence of clear state authority on an issue, a federal court has the duty to decide, not avoid, the question presented. *See Martin v. State Farm Mut. Auto. Ins. Co.,* 375 F.2d 720, 722 (4th Cir.1967). This court is required to forecast the rule the South Carolina Supreme Court is likely to adopt in the future keeping in mind all that is known about that court. *Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir.1981). The best evidence of how a state appellate court will likely determine a novel issue is that court's relevant holdings. *See Parke, Davis & Co. v. Health Cross Stores, Inc.,* 364 F.2d 214 (4th Cir.1966).

In South Carolina, there has been a long litany of cases attempting to explain the requirements of effective UIM offers. *See Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 389 S.E.2d 657 (1990); *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555 (1987); *Garris v. Cincinnati Ins. Co.,* 280 S.C. 149, 311 S.E.2d 723 (1984); *White v. Allstate Ins. Co.,* — S.C. ——, 442 S.E.2d 195 (S.C.Ct.App. 1994); *Mathis v. State Farm Mut. Auto. Ins. Co.,* — S.C. ——, 431 S.E.2d·619 (S.C.Ct. App.1993) *American Sec. Ins. Co. v. Howard,*

— S.C. ——, 431 S.E.2d 604 (S.C.Ct.App. 1993); *Jackson v. State Farm Mut. Auto. Ins. Co.*, 301 S.C. 440, 392 S.E.2d 472 (Ct. App.1990), *aff'd as modified*, 303 S.C. 321, 400 S.E.2d 492 (1991); *Dewart v. State Farm Mut. Auto. Ins. Co.*, 296 S.C. 150, 370 S.E.2d 915 (Ct.App.1988).

A short review of some of the most recent cases is necessary in an attempt to understand the rather confused state of UIM law as it exists today. In *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984), the South Carolina Supreme Court stated that "underinsured motorist coverage in any amount up to the insured's liability coverage must be offered to a policyholder." *Id.* 311 S.E.2d at 726. *Garris* involved a minimum liability policy of $15,000/$30,000/$5,000 in which the court held that the insurer failed to comply with the statutory predecessor of S.C.Code section 38–77–160 because it offered the insured underinsured motorist coverage in amounts greater than 15/30/5, but had mistakenly not offered UIM coverage at the 15/30/5 limits. The insurer had relied on the assumption that an offer at that amount "would be meaningless because it would be offset by recovery from the at fault insured who is required to carry at least 15/30/5 liability insurance." *Id.* at 726. The court disagreed and found the offer ineffective. *Id.*

In *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987), the South Carolina Supreme Court developed the test for an effective offer of UIM coverage. The question in *Wannamaker* was whether a nine page booklet accompanying the insured's premium notice constituted a meaningful offer of UIM. *Id.*, 354 S.E.2d at 556. Specifically recognizing that *Garris* required that "underinsured motorists coverage in any amount up to the insured's liability coverage *must* be offered to a policyholder," *id.* at 556 (quoting *Garris*, 311 S.E.2d at 726), the court recognized the need to adopt a standard because "[n]either the statute nor any South Carolina case has specified the form or manner in which insurers must offer underinsured motorist coverage to its policyholders." *Id.* at 556. Commonly known in South Carolina today as the

"*Wannamaker* test," that standard was as follows:

(1) [T]he insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

We find this standard **reasonable** and expressly adopt it here.

*Id.* at 556. (emphasis added).

One year after *Wannamaker*, the South Carolina Court of Appeals applied the test in *Dewart v. State Farm Mut. Auto. Ins. Co.*, 296 S.C. 150, 370 S.E.2d 915 (Ct.App.1988) holding that the insurance company failed the third prong of the *Wannamaker* test because it used an inadequate insert to explain UIM coverage. *Id.* at 917. In that case, the court found that the renewal notice did not adequately direct the insured to the important language about UIM contained in the accompanying insert. *Id.*

In *Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 389 S.E.2d 657 (1990), the South Carolina Supreme Court shed a little more light on what constituted an effective offer of underinsured motorist coverage. In *Hanover*, the offer was held to be ineffective because it was made only for the amount of the insured's liability coverage. The record included specific testimony by the insurance agent that if an insured requested coverage in any amount less than his liability coverage, the agent would not write the policy. *Id.* 389 S.E.2d at 658. The court did not directly state the offer was ineffective for having failed the *Wannamaker* test, *see id.* at 658–59, but instead returned to the language of the earlier 1984 *Garris* case by noting that the court had in *Garris* "construed [38–77–160] to require an offer of underinsured motorist coverage 'in any amount up to' the insured's liability coverage." *Id.* at 658 (quoting *Garris*, 311 S.E.2d at 726). Therefore, although not directly applying the *Wannamaker* test, the offer in *Hanover* would have failed the second prong of the test in

that it did not specify the limits of optional coverage. In fact, the offer did not include optional coverage at all, but only made UIM coverage available at the insured's liability limits. *Id.* The court concluded by stating: "We find the statutory language clear: had the legislature intended coverage only in an amount equal to the insured's liability limits, it would have specified coverage be offered 'at' rather than 'up to' that limit." *Id.* at 658.

The South Carolina Court of Appeals applied the *Wannamaker* test[3] in 1990 case, *Jackson v. State Farm Mut. Auto. Ins. Co. (Jackson I)*, 301 S.C. 440, 392 S.E.2d 472 (Ct.App.1990), *aff'd as modified*, 303 S.C. 321, 400 S.E.2d 492 (1991). In *Jackson I*, the offer for UIM coverage on a policy of the vehicle involved in an accident was found ineffective among other reasons in that it provided

> only a cursory definition of underinsured motorist coverage and contains no explanation of how it differs from other coverages. It states in general terms that the optional coverage is available up to the limits of the insured's liability coverage, but does not specify the limits of coverage in dollar amounts. It also fails to state the amount of additional premium the insured must pay for underinsured coverage at the specified limits.

*Id.* 400 S.E.2d at 474. Jackson owned four vehicles—all of which were insured by State Farm. In a subsequent case, *Jackson v. State Farm Mut. Auto. Ins. Co. (Jackson II)*, 303 S.C. 321, 400 S.E.2d 492 (1991), the South Carolina Supreme Court found that differences in the premium renewal notices and inserts explaining the UIM coverage for the three other automobile policies owned by Jackson passed the *Wannamaker* test. *Id.* 400 S.E.2d at 493–94. In evaluating these offers, the court relied exclusively on the elements of the *Wannamaker* test and did not look to the *Garris* language. *See id.*

The UIM effective offer cases continued in 1993 with *American Sec. Ins. Co. v. Howard*, —— S.C. ——, 431 S.E.2d 604 (S.C.Ct.App.

1993). The offer in *Howard* was held ineffective because "the form offered underinsured motorist coverage without specifically stating the limits of the coverage. To be effective, the offer must specify the limits of the additional coverage in dollar amounts." *Id.* 431 S.E.2d at 607 (citing *Jackson I*, 392 S.E.2d 472). The court stated that the law "requires automobile insurance carriers to offer their insureds optional underinsured motorist coverage up to the limits of their insured liability coverage. In order to comply with the statutory mandate, the offer must satisfy four criteria [of *Wannamaker*]." *Id.* at 607 (citing S.C.Code Ann. § 38–77–160 (Law.Co-op.1989 & Supp.1992) and *Wannamaker*, 354 S.E.2d 555)). This case involved a straightforward application of the *Wannamaker* test. Notoriously missing from this opinion was any reference to the *Garris* language requiring the insurer to offer the UIM coverage in "any amount up to" the insured's liability coverage. *See id.*

One week after the *Howard* decision, the Court of Appeals issued *Mathis v. State Farm Mut. Auto. Ins. Co.*, —— S.C. ——, 431 S.E.2d 619 (S.C.Ct.App.1993). The insured in *Mathis* had liability limits of $100,000/ $300,000/$50,000. The UIM offer was found ineffective because although the offer included variable bodily injury and accident coverage UIM premiums, the UIM property damage limits were offered only at $5,000. *Id.* 431 S.E.2d at 621. Plaintiff Mathis argued that his two State Farm automobile policies "should be reformed because State Farm's failure to offer property coverage in *any amount* other than $5,000 violated *Wannamaker*." *Id.* at 621 (emphasis added). Applying the *Wannamaker* test, the court held the offer was ineffective and concluded by stating: "We hold that a liberal construction of section 38–77–160 requires that offers of UIM insurance include coverage for both bodily injury and property damage up to the limits of the insured's liability policy." *Id.* at 622. Again, however, the court did not specifically base its ruling on the *Garris* lan-

---

3. Although it is in fact the same test, Judge Bell referred to the *Wannamaker* test as the *Dewart* test. *Compare State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555, 556

(1987) *with Dewart v. State Farm Mut. Auto. Ins. Co.*, 296 S.C. 150, 370 S.E.2d 915, 916 (Ct.App. 1988).

guage that the offer must include UIM in "any amount up to" the liability coverage.

Unfortunately, the absence of the *Garris* language was only short lived. In *White v. Allstate Ins. Co.*, —— S.C. ——, 442 S.E.2d 195 (S.C.Ct.App.1994), the South Carolina Court of Appeals provided its most recent interpretation of an effective UIM offer. *White* involved two minimum liability policies in which the insured offered UIM "only for the amount of coverage of the minimum liability limits of the policy." *Id.* 442 S.E.2d at 196. Not mentioning the *Wannamaker* test, the court held the offer to be ineffective looking ultimately to the *Garris* language which required the UIM offer to be "in any amount up to" the insured's liability coverage. *Id.* at 196–97. Because the applicable insurance policies were minimum liability policies and the UIM offer was made only for liability limits, the court of appeals held the offer to be ineffective. The court noted that minimum liability policies were not excepted from the statutory requirement of section 38–77–160 and rejected Allstate's argument that to require the insurer to offer UIM coverage in any amount up to the minimum limits ignored business reality and was not commercially unreasonable. *Id.* at 197. The court concluded by remanding the case to the trial court to reform the policies "to provide UIM coverage up to the liability limits of the policies at issue." *Id.* at 197.

### C.  Analysis

■■■  Under South Carolina law, State Farm has the burden to prove that it made an effective offer of UIM coverage. *See State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555, 556 (1987). In this case, Plaintiffs rely on the language of *White* to assert the offer made to Mr. Holt was ineffective as a matter of law because it failed to offer UIM in "any amount up to" his liability limits. After a history of learning through trial and error, State Farm claims it made an effective UIM offer under S.C.Code section 38–77–160, has complied with the *Wannamaker* test, and is further shielded by having its offer form approved by the Insurance Commission in compliance with S.C.Code section 38–77–350.

This court begins with the premise that the best evidence of what constitutes a meaningful offer of UIM coverage under South Carolina law was the test enunciated by the South Carolina Supreme Court in *Wannamaker* read in conjunction with the legislative mandates of S.C.Code section 38–77–350. As a starting point, this court finds as a matter of law that State Farm's UIM offer clearly met all four prongs of the *Wannamaker* test. This court now turns to the question of the effect of section 38–77–350.

This court finds that S.C.Code section 38–77–350 ultimately controls this case and provides the insurance company with protection against the insured's claim of an ineffective UIM offer. Enacted in mid–1989, the statute stated that insurers **"shall"** use an offer form approved by the South Carolina Insurance Commission after December 1, 1989 and also specified the minimum requirements that the offer form must contain. S.C.Code Ann. § 38–77–350(A) (Law.Co-op.Supp.1993). Under South Carolina law, "[o]rdinarily, the use of the word "shall" in a statute means that the action referred to is mandatory." *South Carolina Dep't of Highways & Publ. Transp. v. Dickinson*, 288 S.C. 189, 341 S.E.2d 134, 135 (1986). If a statute is clear and explicit, there is no room for construction by the court, and the court "must therefore apply it literally. Taken literally, the word "shall" is mandatory." *State v. Foster*, 277 S.C. 211, 284 S.E.2d 780, 780 (1981). Further, the statute stated that if a named insured completed and properly executed the form, it was conclusively presumed that the named insured made an informed, knowing selection of coverage thereby protecting the insurance company and agent from any liability due to the insured's failure to purchase the optional coverage. S.C.Code Ann. § 38–77–350(B). In this case, State Farm's offer form complied with all of the statute's requirements, and most importantly, the South Carolina Insurance Commission approved the State Farm form that State Farm was required to use.

Plaintiffs argue that the Insurance Commission's approval is not conclusive of the validity of the form relying on *Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 310 S.E.2d

814 (1983). This court finds the facts in *Gambrell* to be clearly distinguishable. In that case, the respondent insurance company was relying solely on a Department of Insurance Interpretative Bulletin to argue that its disputed policy provisions complied with the state's laws. *Id.* 310 S.E.2d at 816–17. Unlike the insurance company in *Gambrell,* here State Farm is relying on the clear language of a state statute in addition to the direct approval of its insurance offer form by the state's insurance agency. Therefore, this court finds that particular aspect of *Gambrell* to be inapplicable.

On the other hand, *Gambrell* is instructive on several other important concepts of South Carolina insurance law. In *Gambrell* the South Carolina Supreme Court stated:

> When interpreting a statute, "the legislative intent must prevail if it can be reasonably discovered in the language used, which must be construed in light of the intended purpose of the [s]tatutes. One of the primary rules in a construction of a statute is that the words used therein should be taken in the ordinary and popular significance, unless there is something in the statute requiring a different interpretation."

> Insurance policies are subject to the general rules of contract construction. We must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary and popular meaning. We should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties.

*Id.* at 816 (quoting *Laird v. Nationwide Ins. Co.,* 243 S.C. 388, 134 S.E.2d 206, 209 (1964)) (citations omitted).

Plaintiffs' argument that the offer was ineffective relies primarily on that fact that UIM was not offered in "any amount up to" the insured's liability limits. For this court to accept the position of Plaintiffs, it would have to disregard the express statutory protection afforded the insurer and require that all offers include language that the insured may choose **any** amount of UIM coverage, *e.g.,* from one penny up to his liability limits. This construction of the law is not reasonable because the insurer is required by *Wannamaker* and section 38–77–350 to provide the insured with specific premium amounts for varying liability coverages. S.C.Code § Ann. 38–77–350(A)(2); *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555, 556 (1987). In this case, State Farm did provide the limits of optional coverage in various dollar amounts.

In its Reply Brief, Plaintiffs do not contest the fact that the State Farm form offers UIM coverage up to the liability limits. (Pls.' Reply Br. 1) Relying on *White v. Allstate Ins. Co.,* — S.C. —, 442 S.E.2d 195 (S.C.Ct.App.1994), Plaintiffs assert that the offer is defective because Mr. Holt was never informed of the availability· of UIM coverage below the minimum limits.[4] However, the offer in *White* is distinguishable in several important aspects. First, the insured

---

4. This court recognizes that absent section § 38–77–350, the Court of Appeals' holding in *White* would probably require this court to reform the policies to include UIM coverage and find that the offers were ineffective because they did not expressly list amounts of UIM available below the Holt's minimum liability limits. *See Parlato v. Abbott Laboratories,* 850 F.2d 203 (4th Cir. 1988). Like the policies in *White,* the Holt's policies are minimum liability policies. Disagreeing with the conclusion of the South Carolina Court of Appeals in *White,* this court believes that requiring the insurer to offer the insured UIM "in any amount" up to his liability limits while at the same time requiring the insurer to specify the limits of optional UIM coverage in dollar amounts would become cumbersome and commercially unreasonable for the insurer and confusing for the insured. *See White,* 442 S.E.2d at 197. For example, in the case of the Oldsmobile involved in this accident, the optional UIM coverage at the minimum 15/30/5 limits was listed as costing $1.00. *White* would require the insurer to split pennies in calculating premium costs for an infinite number of combinations of optional coverage in "any amount" below the minimum liability limits. To literally comply with *White* and the second prong of *Wannamaker* would require State Farm to offer the plaintiffs one million five hundred choices of bodily injury (per person) UIM coverage alone—not even considering the multitude of combinations when you factor in the bodily injury (per accident) and property damage UIM options. Although there are some significant differences discussed below between the Holt's offers and the *White* offer, this court will not follow *White* because it finds that the intent of the legislature by its enactment of S.C.Code Ann. section § 38–77–350 is to prevent such an exercise in confusion.

in *White* was only provided an offer at his liability limits, and the offer included a single price premium quote. *Id.* at 196. Here, however, State Farm's offer included nine separate price quotes for optional UIM protection. Additionally, after clearly identifying Underinsured Motor Vehicle Coverage as "Coverage W," the offer specifically stated: "You may also purchase Coverage W with limits up to your liability (Coverage A) limits for bodily injury and property damage." This language mirrors the statutory requirement of the law that mandates carriers to "offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage...." S.C.Code Ann. § 38–77–160.

The most important difference in not only *White*, but all previous South Carolina cases interpreting an effective UIM offer, is that those cases involve UIM offers made prior to the December 1, 1989 applicability date of S.C.Code section 38–77–350. As previously mentioned, the South Carolina Supreme Court developed the *Wannamaker* test in 1987 because it noted that "[n]either the statute nor any South Carolina case has specified the form or manner in which insurers must offer underinsured motorist coverage to its policyholders." *Wannamaker*, 354 S.E.2d 555, 556. However, by 1989, the legislature had spoken directly on this issue and had prescribed the "form which automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies." S.C.Code Ann. § 38–77–350(A).

Courts must presume that the legislature intended to accomplish a purpose with each statute and that it was not engaging in futile legislation. *Purvis v. State Farm Mut. Auto. Ins. Co.*, 304 S.C. 283, 403 S.E.2d 662, 666 (1991). Additionally, as a general rule, later legislation takes precedence over earlier enacted legislation. *Lloyd v. Lloyd*, 295 S.C. 55, 367 S.E.2d 153, 155 (1988).

It is the opinion of this court that State Farm should be allowed to rely on the protection afforded insurers by the 1989 enactment of S.C.Code section 38–77–350. South Carolina's Department of Insurance approved the State Farm form as required by the statute. It included the necessary explanations, a list of available limits, the appropriate signature spaces, and the proper name, address, and telephone number of the Insurance Department of South Carolina. Having met those requirements and having its form approved by the Commission, the law states that "it is **conclusively presumed** that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits." S.C.Code Ann. § 38–77–350(B) (emphasis added). Additionally the code states: "Compliance with this section satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and **no person,** including but not limited to, an insurer and an insurance agent is liable in an action for damages on account of the selection or rejection made by the named insured." *Id.* § 38–77–350(D) (emphasis added).

Although there is language in the case law, originating in *Garris* in 1984 and recently applied in *White*, that when read literally would appear to require the insurance companies to provide offers in "any amount" up to the insured's liability coverage, this court finds that such an interpretation cannot be resolved with reasonableness of the *Wannamaker* test and the legislative intent embodied in S.C.Code section 38–77–350.

> One of the most elementary rules for the interpretation of statutes is that the intention of the Legislature must be gathered from a literal interpretation of the language of the statute where it is plain and unambiguous.... When the meaning of words is so plain and obvious, the courts cannot speculate on the intention. To do so would be an assumption of legislative power.

*Independence Ins. Co. v. Independent Life & Acc. Ins. Co.*, 218 S.C. 22, 61 S.E.2d 399, 404 (1950) (quoting *State Co. v. Jones*, 99 S.C. 218, 82 S.E. 1048, 1048–49 (1914)). To the extent that such a requirement is inconsistent with section 38–77–350, this court believes the state's highest court would find

that the legislature, having spoken on the issue, expressed its clear intent to afford an insurance company a conclusive presumption of validity once its offer form meets the requirements of that section.

Therefore, this court finds as a matter of law that State Farm has met its burden of making an effective offer considering section 38–77–160, the *Wannamaker* test, and most importantly, the clear and concise statutory language of section 38–77–350. Having found that State Farm made an effective offer of UIM under South Carolina law and recognizing that it is undisputed that Mr. Holt rejected UIM coverage on the policy covering the Oldsmobile involved in the accident in addition to the State Farm policies covering his two other vehicles, this court refuses to reform the policies to include such UIM coverage.

It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment be hereby **GRANTED.**

**AND IT IS SO ORDERED.**